Helen HALEY and Evelyn Archer, Appellants,

v.

UNITED STATES of America, Appellee.

No. 14141.

United States Court of Appeals Ninth Circuit.

Sept. 21, 1954.

Robert G. Dodge, Heen, Kai, Dodge & Lum, Honolulu, Hawaii, for appellants.

A. William Barlow, U. S. Atty., Louis B. Blissard, E. D. Crumpacker, Asst. U. S. Atty., Honolulu, Hawaii, Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

Helen Haley and Evelyn Archer appeal from a judgment convicting them of two violations of 18 U.S.C. § 1381(a) by harboring one Vaughan knowing him to be a deserter from military service and (b) refusing to give him up after the demand of an officer authorized to receive him.

Title 18 U.S.C. § 1381, provides in pertinent part as follows:

"Whoever harbors, conceals, protects, or assists any such person who may have deserted from such service, knowing him to have deserted therefrom, or refuses to give up and deliver such person on the demand of any officer authorized to receive him—

"Shall be fined not more than $2,000 or imprisoned not more than three years, or both."

■ The indictment had two counts. In the first it was against both appellees for harboring, etc., "the said Helen Haley and Evelyn Archer *knowing* the said James E. Vaughan was then and there a deserter from the United States Air Force." (Emphasis supplied.) In the second it was "for failure to give up and deliver" Vaughan, a "deserter" after demand had been made upon them by "an officer duly authorized to receive" him. It is apparent that the burden of proof was on the prosecution as to both counts to show knowledge in each appellant that Vaughan was a deserter and as to the second count to show, in addition, that a demand was made on each appellant to give up and deliver him to an officer authorized to receive him.

■ While the sentence on the first count in each case was for but $100 on the first count with a suspension of sentence on the second count, the appeal is of vital importance to appellants for the charges were of felonies, and if the convictions are upheld both will be marked as felons despite the light sentences. Cartwright v. United States, 5 Cir., 146 F.2d 133, 135. Aside from the social shame of the name felon, in many states to which they might go to escape it they would be disqualified for various employments, and in Hawaii they were expressly disqualified from sitting on grand and petit juries. Haw.Rev.Laws, § 9792.

The entire evidence of appellants' acts covers the period between the night of the 30th of March and the night of the next day, March 31st. Vaughan was engaged to appellant Haley, and on March 28th each had gone to the Registration office and signed the documents for a marriage license, which they obtained.

On the night of March 30th, appellant Haley heard the voice of a Major Dowsett on the telephone which asked her if she "knew James Vaughan and she said yes. The voice informed her that his status had changed from, *in my opinion,* rather simple AWOL to very important desertion." It further advised her, "that if there was any way she could get hold of *him or have him turn himself in,* and I mentioned I had had experience with him and another man who had been AWOL who had turned himself in, and I believe there was a slight leniency for that. That is why I advised him to do it.

She wasn't sure when or how she could get hold of him, or when she could see him again, and that was the extent of the conversation."

At no time was Miss Haley advised under what, if any, authority Major Dowsett was acting. That she complied with the request is apparent, for Vaughan telephoned Major Dowsett and impertinently told him not to interfere with his, Vaughan's, business.

The testimony is that the following night Vaughan turned himself in, as suggested by Major Dowsett, by leaving the apartment of appellant Haley by the front door before which stood a sergeant of the military police.

The remainder of the testimony is confined to acts of appellants on March 31st, between about 10 P.M. and 11:45 P.M. At about 10 o'clock there was a 15 to 20 minute conversation between the two appellants and four of the Army personnel. The latter said they were searching for Vaughan, that he was a deserter and that "if the man was found in the apartment, it could be a very serious offense because they would be considered as harboring a deserter." They asked permission to search the apartment and were told they could not enter it without a search warrant. They radioed for a police officer who came at once and he asked leave to search the apartment which was refused by appellant Archer, who said a search warrant was required. The police officer confirmed her viewpoint because "he then said he could not go into the apartment, but he warned her that if the man was found leaving the apartment that it would be a serious offense." None of these persons claimed to have warrants for Vaughan's arrest. Five minutes later a second request was made and refused. A sergeant remained at the door and a few minutes later Vaughan walked out to him and was apprehended.

■■ A. As to the period between the night of the 30th and 31st, the Government's only testimony is of Major Dowsett that he requested of Miss Haley to advise Vaughan to turn himself in because, "in his opinion", he was a deserter. Dowsett gave her no statement of his authority to do anything and made no demand that she "give up and deliver Vaughan" to him. Miss Haley's uncontradicted testimony is that she believed Vaughan to be merely absent without leave, he having repeatedly told her that he intended to return to the Army service.

So far as concerns this period the appellee did not sustain its burden of proof that either appellant was harboring Vaughan knowing him to have deserted the service or that they or either of them refused to give him up on the demand of any officer authorized to receive him.

B. As to the period between 10 o'clock and 11:45 P.M. of the night of March 31st, there is no evidence that any one at all demanded of either appellant that she deliver up Vaughan to him. The Government has not established its burden of proof of Count 2 of the indictment as to either appellant. The refusal to admit persons to her apartment who were without any arrest warrant but merely requested such admission is not a refusal of a demand for such delivery up of Vaughan.

As to harboring Vaughan in this hour and three quarters "knowing him to be a deserter", we have appellant Haley's uncontradicted testimony that she believed him no more than absent without leave. Vaughan had told her his intent to go back "on his own" following Major Dowsett's advice. The fact that he waited a few minutes after the last of the demands for admission does not constitute a harboring by one "knowing him to have deserted" the service of the Army.

The court erred in denying the motion for acquittal at the conclusion of the testimony, and the judgments against each of the appellants on both counts are reversed.