[Crim. No. 7565.   Second Dist., Div. One.   Aug. 29, 1961.]

THE PEOPLE, Respondent, v. ROBERT HENRY MIZER, Appellant.

J. B. Tietz for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman Gregory Taylor, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment and orders wherein the appellant was found guilty of violating the provisions of section 647a, subdivision (1) Penal Code (molesting and annoying children).

In an information filed in Los Angeles County on March 11, 1960, the named defendants were charged in Count I with conspiring to violate sections 288a, 286 and 647a, subdivision

(1) of the Penal Code and section 702 of the Welfare and Institutions Code; Count II had to do with charges against the defendant Perry James Fuller; Count III charged Fuller and the appellant jointly with the infamous crime against nature upon the person of Arthur Perry Pritchard (Pritchard was described as being a person of 16 years of age in Count I); Count IV charged the appellant with orally copulating the sexual organ of Pritchard; Count V charged Fuller and appellant with the infamous crime against nature upon the person of Pritchard; Count VI had to do with charges against Fuller and Bob and Count VIII had to do with charges against Fuller and Mosser. Appellant pleaded not guilty (May 11, 1960). In due time (May 18, 1960), appellant made a motion for an order for a commission to take interrogatories. The prosecution made a request at that time to take cross-interrogatories. The motions were granted and the commission issued (May 18, 1960). A jury trial was waived. Each defendant was represented by counsel in court on July 5, 1960. The court stated at that time to counsel, ". . . you are willing to have this matter submitted, is that correct?" The deputy district attorney thereupon stated the stipulation with reference to giving up a jury trial and each of the defendants waived a jury trial. The deputy district attorney then offered to stipulate that the prosecution's case in chief would be submitted upon the testimony taken at the preliminary hearing; both sides to reserve the right to present additional testimony.

The appellant's counsel thereupon stated as follows:

"Mr. Tietz: I stipulate on behalf of the defendant Mizer as stated by the prosecutor, *with one addition, which I think will be agreeable, that the interrogatories proposed by the defendant Mizer and proposed by the prosecution, of certain witnesses in Texas, be available to the court.*

"Mr. Mayer: *We have no objection to that, your Honor.*

"The Court: *Do you so stipulate?*

"Mr. Mayer: So stipulate.

"The Court: This case will now be transferred to Department 109." (Emphasis added.)

The matter, as indicated, was transferred to department 109 and thereupon the case was continued to August 11, 1960; on August 11 it was continued to October 10, 1960; on October 10 it was continued to October 17, 1960; on October 17 it was continued to November 16, 1960.

On November 16, 1960, the judge announced that he had read the preliminary hearing transcript. The court found

Mosser not guilty, and found Bob guilty of violation of the provisions of section 647a of the Penal Code, a lesser and included offense in Count VI and not guilty as to all other counts.

The appellant produced a Sergeant Cantrell of the police department as a witness. The court thereupon found appellant not guilty as to Count I. The police officer then testified. A minister of a church also testified in behalf of the appellant with particular reference to his good reputation in the community. The appellant also produced as a witness a high school teacher who had known the appellant and his family for several years and that witness testified that his reputation was in effect excellent. The appellant testified in his own behalf and categorically denied the statement of the prosecution's witness Pritchard with reference to any sex deviation activity.

The transcript of the preliminary hearing discloses that Pritchard, a white man, testified that he had arrived in Los Angeles on January 17, 1960, as a hitch-hiker from his home in Texas and at such time was 16 years of age. He testified that he met Fuller, a colored man, and went to Fuller's hotel room for two weeks; that Fuller had abnormal sexual activities with him; that Fuller took him to appellant's photographic studio and there he posed as a boxer for some photographs; Pritchard also testified concerning appellant, "he gave me a blow job" and he further stated concerning appellant, "he did corn-hole me a while, but that was all." By the terms used Pritchard apparently meant that appellant had orally copulated his private parts and that he had committed the crime against nature upon him, namely sodomy.

There is no question that Pritchard was in appellant's photographic studio and that certain posed pictures (some of which are in evidence) were taken. Pritchard was paid for posing at substantially the rate which the appellant paid to regular models.

Upon the testimony's being concluded the appellant's counsel argued the cause to the court. He stated among other things the following:

"MR. TIETZ: Your Honor, this matter, it seems to me to be one of the relative credibility of the boy and this defendant. . . .

"With respect to the boy, I think we are fortunate—the Court, of course, is included in that remark—that *we were able to get something on the background of this boy*.

"I think that the Court will agree with me that this boy has had a rather unfortunate background. He perhaps has had little or no education, because of the environment, the broken home, the stepfather going to prison, and all of the other problems that came up to him because of that environment.

"There are certain deductions, I think, we are entitled to make. We believe—the defendant believes—*we took interrogatories from three people down there, whose names we secured, whom the boy said he knew, because we knew those would aid our cause.*

"*Those interrogatories are in the file and without going into the detail of them, there is one from the school principal and the police officer and the other person who knew his reputation down there, and I think they show something of the witness' reputation for honesty and integrity, and also something of his background,* and that is part of the basis of some of the agrument [sic] I would like to make to the Court." (Emphasis added.)

Counsel then pointed out that Pritchard appeared to be at least 19 years of age, 6 feet in height, was a boxer, was quite aggressive, repeatedly volunteered statements at the preliminary hearing; further that he had failed to tell the doctor at juvenile hall about his purported experiences; his alternating certainty and then complete vagueness about commonplace matters.

At the conclusion of the appellant's argument the following was stated:

"THE COURT: Even giving the defendant the benefit of a lot of doubt, both on this point and the other points you have mentioned, when you put the whole thing together, I still think he is guilty of a crime here, and I think it is 647a.1, which is a lesser and necessarily included offense in the offense charged. . . .

"MR. TIETZ: It seems to me the evidence would hardly support that.

"THE COURT: It seems to me that the evidence support that, and that is what I am going to find the defendant guilty of.

"Do you submit it?

"MR. TIETZ: Yes, your Honor, I will submit it.

"MR. MAYER: Submit it.

"THE COURT: The defendant is found guilty of Violation of 647a.1 of the Penal Code, being a lesser and necessarily included offense in the offense charged.

"*That is on Count 4, and I will find him not guilty on the other counts.* (Emphasis added.)

"In order to preserve the rights of the defendant along with the other defendants, I will order a motion for new trial and all the statutory grounds to be entered."

On December 12, 1960, the matter came on for hearing—the motion for new trial, the probation officer's report and sentencing. Appellant's counsel started to make a statement and the judge interrupted and stated:

"THE COURT: May I make a suggestion?

"*Perhaps we can allow the withdrawal of the submission at this point and let him go to trial on this matter.*

"MR. JACOBSON (Deputy district attorney): Your Honor, this was a case that was handled by Mr. Leon Mayer. It came from another Department. *As far as I am concerned that would be agreeable.*

"THE COURT: I would be willing to go along with that if you wish to try the case, if you want to withdraw the submission and resend [*sic*] everything and start over on another trial on it.

"MR. TIETZ: Might I confer with my client? I think he will want that."

A short recess was then taken and upon resumption of the proceedings the appellant's counsel stated:

"MR. TIETZ: *As we understand it, it would be reset for jury trial?*

"THE COURT: *Start all over.*" (Emphasis added.)

Thereupon the deputy district attorney apparently had a change of mind and argued that it would be most unfair to do so and the court then followed the suggestion of the deputy district attorney—namely, not to take any such action as had been discussed by the court.

Appellant's counsel argued to the court on the motion for a new trial and said among other things:

"Here is a boy as the Court knows as shown by the Court's synopsis of the facts, recollection of the facts and testimony, he was 16, he appeared to be much older, he was six feet tall, he had been a boxer, he was posing as a boxer for the defendant, he accepted pay for posing." He further pointed out that the pictures were not lewd in any respect. The motion for a new trial was denied. The appellant was sentenced and he filed a notice of appeal practically forthwith and appeal bail was set.

On February 17, 1961, the parties were before the court to make certain objections to the transcript on appeal and to have the interrogatories included in the clerk's transcript. The deputy district attorney stated no objection with reference to the inclusion of the interrogatories in the first instance and the following then occurred:

"THE COURT: As I remember, this submission was on the preliminary transcript, and *I am sure I never read the interrogatories.*

"MR. TIETZ: *The submission was on the preliminary transcript and it did include the interrogatories.*

"THE COURT: *I don't recall anything about the interrogatories.*

"MR. TIETZ: That brings up a very important point, because the stipulation was that the matter would be submitted on the preliminary, and as I recall it was in Judge Drucker's court—I think Judge Coleman may have been there at the time—I specified that I would stipulate that the interrogatories were to be considered too and that was so stipulated by Mr. Mayer for the District Attorney." (Emphasis added.)

The deputy district attorney then argued that the interrogatories were only to be made available to the court and that it was counsel's duty to present them specifically if they were to be considered. The statements hereinafter set forth were then made:

"THE COURT: *This is the first I heard of any interrogatories.* When the matter was submitted here, *I didn't hear anything about interrogatories.*

"MR. TIETZ: I submitted it upon the basis of the language of the stipulation, and I think that the proposed interrogatories should be part of the clerk's transcript.

"MR. JACOBSON: I will submit it.

"MR. TIETZ: I think that shold [*sic*] be considered and that brings up a rather important question that *the Court didn't. take what was important evidence into account.*

"THE COURT: How could I know your stipulation when I didn't have the transcript?" (Emphasis added.)

Counsel pointed out to the judge that at the time of the argument on the merits of the case (November 16, 1960) he had specifically mentioned the interrogatories. The judge denied the motion to make the interrogatories a part of the record. Appellant then made a motion in this court to augment the record by including therein the interrogatories and replies thereto. This court denied the motion. Since that time,

however, and upon reading the entire record, we have ordered to this court the entire superior court file and all exhibits therein to the end that we presently have before us the entire record of everything which occurred.

The interrogatories were directed to three persons in Mesquite, Texas (a town of about 27,526 people according to the 1960 census), where the chief prosecution witness resided up to and immediately before the episodes involved in this case were alleged to have occurred. The first of the persons to whom the interrogatories were put was the high school principal of the school which the prosecution's witness had attended. From the questions put to the school principal it was learned that the school principal had known the prosecution's witness for a considerable period of time in the school system particularly, and that the reputation of Pritchard for truth, honesty and integrity was bad. The cross-questions by the prosecution brought out that Pritchard had been involved in trouble at the school and otherwise, that he was expelled from school and had left with the remark, ''You can go to hell.''

The second of the persons to whom the interrogatories were put was the sergeant of the police department of Mesquite, Texas. The policeman stated that he had known the prosecution's witness for several years and that Pritchard's reputation for truth, honesty and integrity was bad. The cross-questions by the prosecution brought out that Pritchard had been picked up for certain offenses by the police since 1959.

The third Mesquite witness was a woman who stated that her husband's son was married to the mother of Pritchard, the prosecution witness. Her husband's son was apparently the stepfather of Pritchard and the person referred to from time to time as the one who was in the penitentiary. In any event this witness stated that she did not know of the general reputation of Pritchard for truth, honesty or integrity and, therefore, did not know whether it was good or bad under the circumstances.

Appellant asserts among other things:

''I Appellant was deprived of a fair trial contrary to the fifth and fourteenth amendments to the United States Constitution and to Article I, Section 13 of the California Constitution.

''II There was no evidence to sustain a conviction under Section 647(a)(1).

"III The evidence is insufficient to sustain the verdict in that there was no evidence corroborative of the accomplice's testimony.

"IV Sec. 647a Penal Code of the State of California is so vague, uncertain, ambiguous and indefinite as construed and applied to and against this defendant as to abridge his liberty without due process of law in violation of both Article I, Section 13 of the California Constitution and the Fourteenth Amendment to the United States Constitution, and therefore is invalid.

"V A violation of Section 647a Is not an offense included in any that were charged against defendant (other than the count charging conspiracy and with respect to which the trial court entered a verdict of not guilty) and therefore is not one with respect to which there can be a finding of guilty."

It is clear that the trial judge did not read or consider all of the pertinent evidence which was in the record and files at the time of the determination of the case on the merits. It is also clear that the interrogatories and answers thereto were in the superior court file before and at the time the judge was considering the matter and that the same were particularly and specifically called to his attention at the time of the argument on the merits of the case.

A witness may be impeached by evidence that his reputation for truth, honest and integrity is bad. (Code Civ. Proc., § 2051.) Such impeachment is an assault upon the credibility of the witness and the weight of his testimony.

With reference to the contention that the evidence is insufficient to sustain the judgment, it is interesting to note that the judge found appellant not guilty on all counts as charged in the information. In other words he did not believe the prosecution's chief witness when that witness stated that the appellant had orally copulated with him, and he did not believe the witness when he said that the appellant had committed the crime against nature with him. Query: What did the appellant do which was annoying or molesting as those terms are used in section 647a, subdivision (1) and as interpreted in *People* v. *McNair,* 130 Cal.App.2d 696 [279 P.2d 800]; *People* v. *Pallares,* 112 Cal.App.2d Supp. 895 [246 P.2d 173]; *People* v. *Carskaddon,* 170 Cal.App.2d 45 [338 P. 2d 201]; *People* v. *Moore,* 137 Cal.App.2d 197 [290 P.2d 40]?

What was it that was done that might be termed criminal activity or that which was motivated by an abnormal sexual desire (assuming, of course, as we must that the appellant did

not commit the acts with which he was specifically charged in Count IV and did not commit any of the other acts specifically charged in the information)?

We believe that it is fundamental in our system of jurisprudence that all of a defendant's pertinent evidence should be considered by the trier of fact. Perhaps it is true that counsel for the appellant, at the time of argument, should have made it even more clear than he did that there were interrogatories and answers thereto in the file and that the judge should make it a point to read and consider them before coming to a conclusion. It is interestingly true that in this case at the argument on the merits the deputy district attorney waived opening argument and said nothing in closing. The district attorney had asked for and had been granted the right to and he did put cross-interrogatories to the out-of-state witnesses and it would appear that he could well have called the court's attention to the interrogatories and answers had he the vaguest idea that the court was not going to consider the evidence which was then and there in the file. It is apparent in any event that had the judge known of and considered that both the principal of the school which Pritchard attended and the sergeant of the police who had dealt with Pritchard on several occasions, had stated unequivocally and without reservation that Pritchard's reputation for truth, honesty and integrity was bad, and there was no effort to rehabilitate the standing of Pritchard, there might have been a different outcome of the case.

We think it would be a travesty of justice if in spite of the fact that the judge did not consider the evidence this appellant nevertheless is to stand convicted and be required to register as a sex offender for the balance of his days, when in fact he might not have been convicted had the judge read the testimony which was in the record.

It is not necessary to consider here the remaining contentions of the appellant.

The judgment and the order denying motion for new trial are reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied September 20, 1961.