[Crim. No. 21841. Sept. 14, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT STEWART REDMOND, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Wendy Shane, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, John T. Murphy, Eugene W. Kaster, Charles R. B. Kirk and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHARDSON, J.**—Defendant appeals from his conviction of assault with a deadly weapon (Pen. Code, § 245, subd. (a)). He was sentenced to four years in prison and asserts that his Fourth and Fifth Amendment rights were violated and that multiple procedural errors occurred during his trial. We find no reversible error and will sustain his conviction.

The offense in question involved a stabbing incident that occurred in Berkeley shortly after 3 a.m. on May 1, 1978. Defendant and an acquaintance, Shubert, had indulged in an extended and heavy drinking bout during which beer, wine and whiskey were consumed in the garage adjacent to defendant's mother's residence. At some point Shubert was cut below the left lower rib in a downward direction toward the abdomen and defendant does not deny that he held the knife when it entered the victim's body. The People charge that the blow was intentional while defendant insists that it was accidental. Shubert's version was that for no disclosed reason, and while in the garage, defendant stabbed him; he left the garage and was accompanied by defendant to the kitchen of the mother's nearby residence; he then walked three-quarters of a block to a pay telephone and reported the incident. Defendant said that the stabbing occurred in the kitchen when Shubert stumbled against him and defendant, acting reflexively, raised his hand and the knife which he had been holding "went up" into the victim; in order to obtain his car keys preparatory to taking the victim to the hospital, defendant went into his bedroom and deposited his knife, and during that time Shubert left and defendant was unable to locate him.

When police were summoned to the scene, defendant told his mother not to let them search the residence without a warrant. However, she voluntarily permitted the officers entry and gave them the key to the garage. An inspection of the garage revealed blood on the floor and on a counter.

We consider, sequentially, the two assertions of constitutional error and certain claims of evidentiary flaws in defendant's trial.

### THE FOURTH AMENDMENT

When the officers came to his mother's residence, defendant urged her not to permit the police entry and search without a warrant.

During his closing argument, the prosecutor several times suggested that defendant's warning to his mother evidenced a consciousness of guilt. The trial court refused a defense request to instruct the jury that: "It is the constitutional right of every citizen to voice objection to the warrantless search of his or her residence and you must not draw any inference of guilt from the fact the defendant objected to the warrantless search of his residence nor should this fact be discussed by you or enter in your deliberations in any way."

Defendant contends that, in combination, the prosecutor's comments and the refusal of the cautionary instruction impermissibly infringed upon the exercise of his Fourth Amendment right to be free from an unreasonable search and seizure.

Initially, we note that it is not clear that defendant in fact had asserted his constitutional right to be free from unreasonable search and seizure. As to the entry and search of the residence generally, it is more accurate to say that defendant was urging his mother to assert *her* Fourth Amendment right. His interest was vicarious and indirect. Because she owned and occupied the residence her consent to the entry was sufficient. It was for the trial court to determine whose rights were being asserted and its implied finding, adverse to defendant, is supported by substantial evidence.

Moreover, the constitutional claim was waived because defendant did not object to the prosecutor's comments during argument. As we recently observed in *People v. Green* (1980) 27 Cal.3d 1, 34 [164 Cal. Rptr. 1, 609 P.2d 468], "[T]he initial question to be decided in all cases in which a defendant complains of prosecutorial misconduct for the first time on appeal is whether a timely objection and admonition would have cured the harm. If it would, the contention must be rejected [citation] . . . ."

We are persuaded by a review of the entire argument that the prosecutor's references to defendant's admonition to his mother were moderate in tone and import. They lacked significance when considered within the context of defendant's admission that he held the weapon in question. Any harm arising therefrom could have been cured by a timely objection and admonition under our *Green* rationale.

## The Fifth Amendment

Approximately two months after the stabbing, and while then confined, defendant voluntarily revealed to his counsel that the weapon was in his bedroom. Defendant also disclosed this information to his fellow inmates at the Santa Rita facility. At trial, defense counsel asked defendant's mother to locate the knife and she produced it, testifying on direct examination as to the circumstances of the discovery of the knife. In closing argument the two-month delay was stressed by the prosecution as evidence of guilt. The court instructed the jury in accordance with California Jury Instructions Criminal (CALJIC) No. 2.62 that because defendant had elected to testify, "If you find that he failed to explain or deny any evidence or facts against him which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom, those unfavorable to the defendant are the more probable."

 Defendant argues that, together, the prosecutor's argument and the jury's instruction violated his Fifth Amendment right against self-incrimination. (Cf., *Griffin* v. *California* (1964) 380 U.S. 609, 614 [14 L.Ed.2d 106, 109-110, 85 S.Ct. 1229].) We are unable to agree for several reasons.

Again, defendant did not object at trial to the prosecutor's comments, and under *Green* it is when an appropriate objection and admonition would not have cured the harm that "the court must then and only then reach the issue whether on the whole record the harm resulted in a miscarriage of justice within the meaning of the Constitution." (*People* v. *Green, supra*, 27 Cal.3d 1, 34.) "The reason for this rule, of course, is that 'the trial court should be given an opportunity to correct the abuse and thus, if possible, prevent by suitable instructions the harmful effect upon the minds of the jury.' [Citations.]" (*Id.*, at p. 27.) We are persuaded that an objection and prompt admonition would have repaired any damage resulting from the brief comments.

█ When a defendant elects to testify in his own defense a comment on his prior muteness does not necessarily violate his privilege against self-incrimination. (*Jenkins* v. *Anderson* (1980) 447 U.S. 231, 238 [65 L.Ed.2d 86, 94-95, 100 S.Ct. 2124]; *Raffel* v. *United States* (1926) 271 U.S. 494, 496, 499 [70 L.Ed. 1054, 1057-1059, 46 S.Ct. 566]; *People* v.

*Preston* (1973) 9 Cal.3d 308, 317 [107 Cal.Rptr. 300, 508 P.2d 300]; *People* v. *Perez* (1967) 65 Cal.2d 615, 621 [55 Cal.Rptr. 909, 422 P.2d 597].)

Moreover, defendant's conduct with reference to the location of the knife hardly reflects his "silence." The information was revealed to his attorney, mother, and fellow inmates at Santa Rita. Defendant's mother, responding as a defense witness to a question on direct examination, presented at trial for the first time the circumstances of the discovery of the knife. The defense having raised the issue, presumably to negate consciousness of guilt, the evidentiary door was thereby opened and the People were entitled by reasonable cross-examination to develop the circumstances more fully and to argue reasonable inferences therefrom.

Similarly, we find no merit in defendant's contention that because at trial he was not asked to explain or deny the adverse evidence against him, the CALJIC No. 2.62 instruction was improper and violated both his federal and state constitutional privileges against self-incrimination. The scope of his direct examination was a tactical trial choice of his counsel. The record contained evidentiary support for the instruction including defendant's delay for two months in disclosing the location of the knife, his failure to summon an ambulance or assist or transport Shubert for medical assistance, and the variance between the description of Shubert's wound as "downward and inward" and defendant's version of an "upward" thrust caused by Shubert's fall on the knife. These matters, in our view, were the proper subject of discussion by the prosecutor during his closing argument.

We have said that when a defendant testifies in his own behalf he thereby waives his self-incrimination privilege under both federal and state Constitutions as to matters within the scope of permissible cross-examination (*People* v. *Perez, supra*, 65 Cal.2d at pp. 620-622; *People* v. *Ing* (1967) 65 Cal.2d 603, 610-611 [55 Cal.Rptr. 902, 422 P.2d 590]) and that when he denies commission of the crime a defendant thereby renders "very wide" the permissible scope of his cross-examination. (*Ing, supra,* at p. 611.) It is entirely proper for a jury, during its deliberations, to consider logical gaps in the defense case, and the jury is reminded of this fact by the instruction at issue.

The Fifth Amendment does not prevent such a result.

## EXCLUSION OF DEFENSE EVIDENCE

■ After describing his actions following the stabbing, his counsel asked defendant why he did not make further efforts to "find" the victim. The prosecutor's objection was sustained on the ground of irrelevancy. Defendant claims error, arguing that his answer could have established that the stabbing was accidental and that the ruling denied him his right to testify and present evidence.

The question's relevance, however, was marginal. Defendant had already testified at length regarding his activities following the stabbing, including his efforts to assist the victim. The trial court reasonably could have concluded that further testimony as to defendant's efforts to locate Shubert would be cumulative, remote, confusing or misleading. (See Evid. Code, § 352.) We conclude that the trial court in making its evaluation ruling did not abuse its discretion. Moreover, if such an error had occurred, it would not warrant reversal because it does not appear that "The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means." (Evid. Code, § 354, subd. (a); see *People v. Demond* (1976) 59 Cal.App.3d 574, 588 [130 Cal.Rptr. 590]; *People v. Thomas* (1970) 3 Cal.App.3d 859, 864 [83 Cal.Rptr. 879].)

## LIMITATION ON CROSS-EXAMINATION

Defendant contends that in two respects he was improperly limited in his cross-examination of the victim, Shubert.

■ Defendant sought to establish from Shubert that in the past when Shubert drank he frequently "blacked out" and had no recall of events. Defendant's offer of proof included records of Shubert's previous commitments for alcoholism and a record of his prior arrest for intoxication and indecent exposure. Cross-examination of Shubert based on the medical records was denied because of the psychotherapist-patient privilege (Evid. Code, § 1012) and both the medical and arrest records were excluded because the events recorded were too remote and the risk "of undue prejudice ... or of misleading the jury" outweighed any probative value (Evid. Code, § 352). Defendant was permitted, however, to cross-examine Shubert extensively on his problems with alcohol and blackouts.

■ Defendant also sought to establish that Shubert had applied for "victim's compensation." The apparent purpose of this testimony was not only to establish a false motive for identifying defendant, but also to develop a discrepancy between Shubert's failure to identify his assailant shortly after the stabbing and his subsequent identification of defendant as his attacker. However, the defendant's identity as the holder of the knife was not disputed and the court properly barred the cross-examination as irrelevant. "While cross-examination to test the credibility of a prosecution witness is to be given wide latitude, its control is within the discretion of the trial court, and the trial court's exclusion of collateral matter offered for impeachment purposes has been consistently upheld." (*People* v. *Flores* (1977) 71 Cal.App.3d 559, 567 [139 Cal.Rptr. 546]; citations omitted.) Here, as in *Flores*, "Defendant was not denied the opportunity to place the witness in proper perspective. His credibility was thoroughly questioned, and the weight of his testimony was put to a proper test. The jury was afforded full opportunity to appraise the witness and his testimony." (*Id.*, at p. 566.)

### ADDITIONAL EVIDENTIARY RULINGS

We find no abuse of the trial court's discretion in its evidentiary rulings pertaining to Shubert's conflicting statements as to the identity of his assailant. It was undisputed at trial that defendant held the knife, the only issue being whether the contact with the victim was intentional or accidental.

### CLAIM OF SENTENCING ERROR

Defendant argues that following his conviction the court erred in considering defendant's perjury as a reason for sentencing him to the upper term of four years for violation of section 245, subdivision (a). In imposing the upper term, the court gave the following specific reasons for its action: defendant inflicted serious injuries on Shubert, had a lengthy arrest record and a poor adjustment to past probation, lied to the jury, had failed to control his alcohol problem, expressed no remorse for his conduct, asserted no mitigating factors, and was a potentially dangerous person.

■ A trial court's conclusion that a defendant has committed perjury may be considered as one fact to be considered in fixing punishment as it bears on defendant's character and prospects for rehabilitation. (See *In re Perez* (1978) 84 Cal.App.3d 168, 171 [148 Cal.Rptr. 302].)

In an effort to appraise a defendant's character "'a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia.' *United States* v. *Hendrix*, 505 F.2d 1233, 1236 (1974)." (*United States* v. *Grayson* (1978) 438 U.S. 41, 51 [57 L.Ed.2d 582, 590, 98 S.Ct. 2610].) The trial court's explanation was specific in its reasons for sentence, and the court's conclusion that defendant gave perjured testimony was properly considered in assessing both defendant's character and his prospects for rehabilitation.

Defendant claims that the trial court erred in failing to give him the work-time and good-time credit accumulated in county jail prior to his prison commitment, all as contemplated by Penal Code sections 2900.5 and 4019. Recently in *People* v. *Sage* (1980) 26 Cal.3d 498, 507-508 [165 Cal.Rptr. 280, 611 P.2d 874], we concluded that in similar cases it was unnecessary to return such defendants to the trial court for re-sentencing. Rather, we anticipate that the Department of Corrections will implement the appropriate administrative procedures to ascertain defendant's entitlement to such credits.

Having carefully reviewed the whole record before us in the light of defendant's claims, we are persuaded that any errors, singly or in combination, were harmless beyond a reasonable doubt (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]) and that because it is not reasonably probable that a result more favorable to the defendant "would have been reached in the absence of the error" (*People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243]), no miscarriage of justice has occurred (Cal. Const., art. VI, § 13).

The judgment is affirmed.

Tobriner, J., Mosk, J., and Fainer, J.,* concurred.

NEWMAN, J.—I concur. Once more I suggest, though, that the aims of California Rules of Court, rule 29(a)(1) more efficiently would have been furthered had this matter been handled by depublishing the Court of Appeal opinion.

---

*Assigned by the Chairperson of the Judicial Council

The petition filed here by the Attorney General on December 15, 1980, states: "We submit that hearing be granted so that an opinion can be issued that squares with the facts. See, Cal. Rules of Court, Appellate Rule 29(b)." (Page 4.) That, I believe, reflects a myopic view of what rule 29 read as a whole requires.

**BIRD, C. J.,** Dissenting.—The majority find that appellant did not assert his own Fourth Amendment right, but merely urged his mother to assert her right. (Maj. opn. at p. 909, *ante.*) To bolster this conclusion, they stress the fact that the house which the officers sought to search belonged to appellant's mother. (*Ibid.*) The majority thereby imply that appellant had only a tangential interest in the house. In fact, appellant had been living in the house with his mother for the previous 11 months and had also lived there at various times in past years. Appellant was an occupant of the house. His right to be free from unreasonable searches of his home was equal to that of his mother.

The record also shows that appellant at one point stated directly to the officers that they could not search the house without a warrant. Thus, appellant asserted his own Fourth Amendment right. He did not merely tell his mother to assert her right as the majority find.

Appellant at one point told his mother not to permit the search. However, he spoke to his mother because the officers had addressed their questions only to her, not to him. He was not called upon to speak directly to the officers. Therefore, it is unreasonable to draw the conclusion that his remarks to his mother evidenced merely his advice that she assert her Fourth Amendment right. Rather, as a co-occupant he advised his mother to assert their *joint* right to be free from unreasonable searches of their home.

One occupant may validly consent to a search of premises shared by a co-occupant. (*United States* v. *Matlock* (1974) 415 U.S. 164, 171 [39 L.Ed.2d 242, 249-250, 94 S.Ct. 988].) Therefore, appellant had to convince his mother not to consent in order to protect his own Fourth Amendment right. His attempts to so convince her cannot be given the erroneous reading that appellant failed to assert his own rights.

Next, the majority conclude that appellant waived his Fourth Amendment claim on appeal because he did not object to the prosecutor's comments that his refusal to consent to the search of his home

showed his consciousness of guilt. (Maj. opn. at p. 909, *ante*.) This conclusion is just plain wrong. First, the error which occurred at trial was not only that of the prosecutor, but that of the court since it permitted appellant's assertion of his Fourth Amendment right to be used against him to establish guilt. Second, it is disingenuous at best for this court to ignore facts which show indisputably that the claim of error by the trial court *was preserved* on appeal.

The record reveals that immediately after the close of the evidence, the jury was excused and the parties met with the trial judge to discuss jury instructions. Appellant's counsel requested an instruction that every citizen has the constitutional right to voice an objection to a warrantless search of his or her home, that such an objection is not evidence of guilt, and that it should not enter into the jury's deliberations in any way. (See maj. opn. at p. 909, *ante* for text of instruction.)

Appellant's counsel stated that the instruction was necessary since the jury might otherwise conclude that appellant's objection to the warrantless search "was consciousness of guilt, that he had something to hide." The judge replied, "Well, it had to be or else it couldn't have gotten past the hearsay rule." Counsel again stated that the exercise of a constitutional right should not be used as evidence of consciousness of guilt. The judge refused to give the requested instruction. *After* the judge ruled on this and other instructions, the prosecutor proceeded to repeat six times in his closing argument that appellant's objection to the warrantless search was evidence of his consciousness of guilt.

Appellant did *not* waive his Fourth Amendment claim by failing to object to the prosecutor's comments.[1] He had previously preserved the claim by requesting the instruction. Moreover, the trial judge clearly stated that appellant's refusal to consent to the warrantless search

---

[1] Nor did appellant waive his claim by failing to request exclusion of the testimony that he objected to the warrantless search of his home. He may thus have waived his right to *exclude* the evidence, but he did not thereby waive his right to later obtain an instruction *limiting the use of* the evidence. (*United States* v. *Prescott* (9th Cir. 1978) 581 F.2d 1343, 1352, fn. 3; see also Pen. Code, § 1259 and *People* v. *Hannon* (1977) 19 Cal.3d 588, 600 [138 Cal.Rptr. 885, 564 P.2d 1203].)

As this court stated in *Hannon*, the failure to object to testimony at the time it was given "did not . . . waive defendant's right to appellate review of the propriety of the court's jury instruction [based on that testimony] because the Legislature has specifically provided that an objection is not required in order to reserve instruction issues affecting the substantial rights of a defendant. (Pen. Code, § 1259.)" (19 Cal.3d at p. 600.)

"had to be" evidence of a consciousness of guilt. The court erroneously believed that appellant's assertion of his Fourth Amendment right could be used against him. An objection would have been futile. Appellant was not required by law to make one. (*People v. Kitchens* (1956) 46 Cal.2d 260, 263 [294 P.2d 17] ["an objection would have been futile, and 'The law neither does nor requires idle acts.' (Civ. Code, § 3532.)"].)

The trial court erred when it refused to give the proffered instruction. Appellant merely exercised his Fourth Amendment right when he objected to the warrantless search of his home. The trial court compounded its error and impermissibly burdened appellant's assertion of his constitutional right when it allowed his assertion to be used to prove his guilt. (*United States v. Prescott, supra,* 581 F.2d at pp. 1350-1353.)

In *Prescott,* a defendant allowed a suspect in a mail fraud scheme to enter her apartment. The police knocked on her door, displayed their credentials, and said they were looking for the suspect. The defendant denied that she knew the suspect. When the police requested permission to search her apartment, she asked whether they had a warrant. They did not, and she declined on two occasions to open her door. The police broke down the door and found the suspect inside. The defendant was convicted as an accessory after the fact. (18 U.S.C. § 3.)

Defense counsel had sought to argue to the jury that the defendant was not required to consent to the warrantless search and that her refusal to consent could not be used as evidence of her guilt. The trial court refused to permit this argument and declined to give such an instruction. The Ninth Circuit Court of Appeals held that the instruction was correct and that it was prejudicial error to permit the prosecution to use the defendant's refusal to consent to the warrantless search as evidence of guilt.

*Prescott* is directly on point—a defendant refused to consent to a warrantless search; defense counsel proposed, and the court refused to give, an instruction that objection to a search could not be used as evidence of guilt. As the *Prescott* court explained, there is a presumption that an officer has no right to enter a home without a search warrant. (581 F.2d at p. 1350, citing *Camara v. Municipal Court* (1967) 387 U.S. 523, 528-529 [18 L.Ed.2d 930, 935, 87 S.Ct. 1727].) "An occupant can act on that presumption and refuse admission. He need not try

to ascertain whether, in a particular case, the absence of a warrant is excused. He is not required to surrender his Fourth Amendment protection on the say so of the officer. The Amendment gives him a constitutional right to refuse to consent to entry and search." (*Prescott, supra,* 581 F.2d at pp. 1350-1351.)

The holding of *Prescott* is supported by decisions of the federal courts and this court. A person cannot be convicted of interfering with a health officer's warrantless inspection of her home merely because she refused to allow the officer to enter and stated that his entry would violate her constitutional rights. (*District of Columbia* v. *Little* (1950) 339 U.S. 1 [94 L.Ed. 599, 70 S.Ct. 468].) A person has a constitutuional right to refuse to consent to a warrantless administrative search (*Camara* v. *Municipal Court, supra,* 387 U.S. 523, 540 [18 L.Ed.2d 930, 941-942]; *See* v. *City of Seattle* (1967) 387 U.S. 541, 546 [18 L.Ed.2d 943, 947-948, 87 S.Ct. 1737]), and to refuse to permit a United States Marshal to make a warrantless entry into her home to serve a subpoena on another (*Miller* v. *United States* (5th Cir. 1956) 230 F.2d 486, 489-490). Neither act of refusing consent can constitute a crime. (*Camara, supra,* 387 U.S. at p. 540 [18 L.Ed.2d at pp. 941-942]; *See, supra,* 387 U.S. at pp. 545-546 [18 L.Ed.2d at pp. 947-948]; *Miller, supra,* 230 F.2d at p. 490.)

Similarly, this court has held that a person has the right to refuse to consent to a warrantless entry into her home. (*People* v. *Wetzel* (1974) 11 Cal.3d 104, 108, 110 [113 Cal.Rptr. 32, 520 P.2d 416].) The mere refusal of permission to enter one's home cannot provide probable cause to arrest or search. (*Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65, 68 [27 Cal.Rptr. 889, 378 P.2d 113].) Such a refusal cannot constitute the crime of obstructing an officer in the performance of his duties (Pen. Code, § 148). (*Wetzel, supra,* 11 Cal.3d at p. 110.)

Appellant had the right to withhold his consent to the warrantless search of his home. His exercise of that right cannot constitute a crime or provide probable cause to arrest or search. It certainly could not constitute evidence of his guilt. The use of appellant's refusal of consent as evidence of his guilt improperly penalized him for the assertion of a valid constitutional right.

*Prescott* drew a persuasive analogy to the prohibition on using a defendant's assertion of his privilege against self-incrimination as evidence of his guilt (*Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106,

85 S.Ct. 1229]). (*Prescott, supra*, 581 F.2d at pp. 1351-1353.) A defendant's silence is generally "so ambiguous that it is of little probative force." (*United States* v. *Hale* (1975) 422 U.S. 171, 176 [45 L.Ed.2d 99, 104, 95 S.Ct. 2133].) Because the innocent as well as the guilty may assert the right to remain silent, guilt cannot be inferred from that silence. (*Id.*, at p. 177 [45 L.Ed.2d at p. 105].) Thus, to use a defendant's silence against him is to "cut[ ] down on the privilege by making its assertion costly." (*Griffin, supra*, 380 U.S. at p. 614 [14 L.Ed.2d at p. 110].)

The same rationale is applicable to a refusal to consent to a warrantless search. Such refusal is also ambiguous and therefore of little probative value. It may evidence completely innocent behavior. "There are many reasons other than guilt of a felony why an occupant of an apartment may not wish himself or others present exposed to the immediate view of a stranger, even if the stranger is a police officer." (*Tompkins* v. *Superior Court, supra*, 59 Cal.2d at p. 68.)

Since the trial court committed federal constitutional error, the state must show that the error was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) The impact of appellant's objection to the warrantless search was emphasized when the prosecutor repeatedly argued that the objection showed appellant's consciousness of guilt. The prosecutor's comments cannot be characterized as "moderate in tone and import." (Maj. opn. at p. 909, *ante*.) They were inflammatory in tone and powerful in impact.[2]

---

[2]The prosecutor's comments were as follows: "Mrs. Redmond gave [the police officers] permission to come in, search the house for other people and then later gave them permission to search the garbage. *Mr. Redmond is sitting there saying, 'Don't let them search the house without a warrant.' Now that particular statement is essentially saying that Mr. Redmond knew that there was incriminating evidence within that house....*

"Essentially what that shows is again *the defendant's state of mind, what he was thinking about, how he could hide and conceal, that should be taken in light of the defendant's statement, 'Don't let them search the house without a warrant.'*...

"Now again he testified that Mr. Redmond says, 'Don't let them search the house without a warrant.' Now ask yourselves, *if you were in Mr. Redmond's shoes* and that Mr. Shubert had just simply fallen for some unknown reason into a knife and severed his liver and that it was an accident *and you were completely innocent of any type of conduct,* would you say to a police officer, 'Don't let them search the house?' *Is that consistent with an innocent state of mind or is that consistent with someone who is in fact trying to convince the mother not to let them search the house because there is in-*

The significance of the evidence and the prosecutorial comments was not mitigated by the fact that appellant admitted he held the knife which injured the victim. (Maj. opn. at p. 909, *ante.*) That admission in no way ensured his conviction, because the crucial issue at trial was not whether appellant held the knife. Rather, the issue was whether he stabbed the victim accidentally or intentionally. The evidence that he objected to the search of his home, and the prosecutor's argument that his objection showed he had a guilty conscience, refuted his contention that he had done nothing wrong. This devastating attack on appellant's basic theory of the case was prejudicial.

There is another serious flaw in the majority opinion. The trial court erred in excluding appellant's testimony concerning why he did not make further efforts to find the victim after the stabbing. This evidence was not merely marginally relevant. (Maj. opn. at p. 912, *ante.*) It was highly relevant to the central issue in the case. This denial prevented appellant from presenting evidence in his defense. (*People* v. *Reeder* (1978) 82 Cal.App.3d 543, 552 [147 Cal.Rptr. 275]; *People* v. *Mizer* (1961) 195 Cal.App.2d 261, 269 [15 Cal.Rptr. 272].)

Appellant contended that the stabbing was an accident. The court permitted limited testimony. After the stabbing occurred, appellant testified that he went into the bedroom to get his keys. He told his mother that he was going to take the victim to the hospital. Upon returning, he could not find the victim. At this point, the court sustained a relevancy objection to defense counsel's question about why appellant had not made further efforts to find the victim.

Clearly, the question was relevant to show appellant's innocent state of mind. If he had been permitted to answer the question, he could have

---

*criminating evidence all over the place?* I submit to you that it is the latter. . . .

"Now ask yourselves a question: *If you were innocent, if you had nothing to hide, would you say, 'Don't let them search the house unless they have a search warrant'?* . . .

"*Now circumstantial evidence is important in this case because it shows you—it is the only way I can show you someone's state of mind. . . . Essentially what evidence do we have to show state of mind. . . .* [¶] The second is, '*Don't let them search the house unless they have a search warrant.*' He is saying he is concealing the evidence involved, the knife . . . .

"Now Mrs. Redmond from the testimony of all of the witnesses appeared to me to be acting just like you and I would act, that she has nothing to hide, so she let them search. Again, I am emphasizing that *that particular statement is not Mr. Redmond's true and accurate and honest exercising of a constitutional right, that is, in fact, him trying to hide the fact that there is a lot of incriminating evidence in that house* and essentially he did not have enough time to clean it all up." (Italics added.)

testified about why he did not try to find the victim and carry out his intention to take him to the hospital. His explanation was relevant to show that his state of mind immediately after the stabbing occurred was consistent with his contention that the stabbing was an accident. (See *People* v. *Ogg* (1958) 159 Cal.App.2d 38, 51 [323 P.2d 117]; *People* v. *Brown* (1921) 53 Cal.App. 664, 666 [200 P. 727].) The court sustained an objection to appellant's testimony at a critical point. The testimony was not "remote, confusing or misleading." (Maj. opn. at p. 912, *ante.*) Nor was it cumulative. (*Ibid.*) Appellant had not previously been permitted to testify about why he did not make further attempts to find the victim.

Contrary to the majority's conclusion (maj. opn. at p. 912, *ante*), the relevance of this evidence was apparent from the question itself. On its face, the question concerned appellant's state of mind just after the stabbing occurred. That state of mind was relevant because it would have shed light on appellant's state of mind at the time of the stabbing. Therefore, no offer of proof or other explanation of appellant's proposed testimony was required. (Evid. Code, § 354, subd. (a).)

The error in excluding appellant's testimony was prejudicial. Appellant's state of mind was the central issue at trial. The prosecutor, by arguing repeatedly that appellant had not called an ambulance or helped the victim after the stabbing, relied heavily on evidence that appellant's excluded testimony could have rebutted or explained. The prejudicial impact of the exclusion was further emphasized by the giving of CALJIC No. 2.62, which states that inferences unfavorable to the defendant may be drawn from his failure to explain or deny evidence if facts within his knowledge permit him to do so.

The giving of CALJIC No. 2.62 was in itself improperly based on appellant's failure to explain why he did not call an ambulance for the victim or drive him to the hospital. The majority ignore the fact that the trial court denied appellant the opportunity to explain, and find that CALJIC No. 2.62 was supported by his failure to explain![3] (Maj. opn. at p. 911, *ante.*) The reason appellant failed to explain why he did not find or aid the victim was that he had been *prevented* from doing so

---

[3]The majority also improperly find support for CALJIC No. 2.62 in the difference between prosecution evidence and appellant's testimony regarding the direction of the victim's stab wound. (Maj. opn. at p. 911.) This difference was merely a contradiction in the evidence. "[A] contradiction is not a failure to explain or deny." (*People* v. *Saddler* (1979) 24 Cal.3d 671, 682 [156 Cal.Rptr. 871, 597 P.2d 130].) It does not support the giving of CALJIC No. 2.62. (*Id.*, at p. 683.)

when the court sustained the prosecutor's objection to the evidence. How can this court uphold the drawing of an adverse inference from a failure to explain something a defendant was specifically precluded from explaining? (See *People* v. *Randolph* (1957) 147 Cal.App.2d Supp. 836, 845 [306 P.2d 98] [improper for prosecutor to argue that defendant should have produced evidence of police officers' brutality, where trial court had excluded records which might have shown such brutality].)

Here, appellant's Fourth Amendment right and his right to present evidence in his own defense were violated. By casually dismissing these errors, the majority dishonor the Constitution. They construct a trap in which persons who assert their Fourth Amendment rights can have that assertion used against them. Then, the accused are prevented by the court from explaining their conduct, or establishing a relevant state of mind. The subsequent failure to explain is then used against them! The Mad Hatter could not have created a more absurd set of rules.

Clearly, the errors that occurred at this trial were of constitutional dimension and obvious as well as prejudicial.

Kingsley, J.,* concurred.

Appellant's petition for a rehearing was denied October 28, 1981. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.