[Crim. No. 12729. Third Dist. Apr. 17, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL LEE CALLEGRI, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Christine Zilius, Mark L. Christiansen and George Bond, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Roger E. Venturi and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FIELDS, J.**\*—Defendant was convicted of petty theft with a prior conviction for burglary. (Pen. Code, § 666.) He asserts the prosecutor committed prejudicial error by questioning and commenting on his prearrest silence, and the court erred by denying his motion to stipulate to the prior conviction. We shall affirm.

### FACTUAL HISTORY

Michael Kale was employed by Mervyn's department store as a security guard. On the evening of October 28, 1982, he noticed defendant alighting from a light blue sedan parked near the store. Kale's attention was drawn to defendant because he had received a description of defendant from another employee, following a previous incident. Defendant proceeded to the men's department, selected a ski jacket and tried it on. A male and a female joined defendant. He modeled the jacket for them, they conferred, and the couple left the area. Kale observed these activities from a security observation post.

Defendant left the store wearing the jacket without stopping to pay for it. Kale followed him, exhibited his badge, and asked defendant to stop. Defendant fled and was thereafter captured by Kale and three other employees. Defendant was very combative during his apprehension, thrashing, kicking and threatening to kill Kale. During the struggle, the light blue sedan pulled up to the scene. The same male that had spoken to defendant in the store stepped out of the car. Defendant asked for help, but the male responded "I can't take four of them," returned to the car and left. Shortly thereafter the police arrived and took custody of defendant.

Defendant testified on his own behalf. He stated he was indebted to a man named Luis (nicknamed Gangster) in the amount of $1,300 for heroin sup-

\*Assigned by the Chairperson of the Judicial Council.

plied to defendant. In an effort to collect the debt, Luis shot defendant in the face. A Dr. Popplewell testified that he had treated defendant for a gunshot wound to the face.

Defendant went to Palm Springs after this incident and remained there for three months. He returned to Stockton, where Luis continued to attempt to collect the debt, threatening to hurt defendant. Luis finally informed defendant that he (defendant) would have to steal some items at a shopping mall to repay the debt. Luis was armed with a gun at this time.

Luis first took defendant to Penney's where he unsuccessfully attempted to shoplift a video game. Luis then took defendant to Mervyn's, ordering him to steal a ski jacket. Defendant complied.

On cross-examination, defendant testified he took no steps to protect himself after being shot by Luis. He also testified he had never been chased out of Mervyn's prior to the incident in question. When asked by the prosecutor why he did not tell Kale he had been threatened, defendant responded: "What good would he have did [*sic*]? He's no police, Stockton police officer." Over defense counsel's objections, the prosecutor asked whether defendant told anyone he stole the coat because of the threat. He replied negatively.

On rebuttal, Mervyn's security manager Renee Bailey testified that defendant and four other males stole five jackets from Mervyn's prior to the present offense. The men were chased by security guards but never captured. The following day, defendant again entered the store, went to the men's department and put on a jacket. When approached by a clerk, he swore and yelled at her, threw the jacket and left the store when asked to do so. On the night defendant was arrested, upon seeing Bailey, he lunged at her and said "Yeah, you tried to get me before and you couldn't."

I

■ The question before us is, should the privilege against self-incrimination, within the meaning of article I, section 15 of the California Constitution,[1] be extended to hold that prearrest silence may not be used against a defendant at trial? We answer no.

In *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], the United States Supreme Court struck down former article I, sec-

---

[1]"*Persons may not* twice be put in jeopardy for the same offense, *be compelled in a criminal cause to be a witness against themselves,* or be deprived of life, liberty, or property without due process of law." (Italics added.) (Cal. Const., art. I, § 15.)

tion 13 of the California Constitution, which permitted adverse comment on defendant's failure to testify at trial, because of the Fifth Amendment to the United States Constitution.[2]

Subsequent California cases held that commenting on the failure of a defendant to respond to an accusatory statement while in custody violates the rule of *Griffin* (*People* v. *Cockrell* (1965) 63 Cal.2d 659, 669-670 [47 Cal.Rptr. 788, 408 P.2d 116]), as does a comment on a defendant's failure to disclose an alibi after being arrested. (*People* v. *Crawford* (1967) 253 Cal.App.2d 524, 535-536 [61 Cal.Rptr. 472].)

In *Doyle* v. *Ohio* (1976) 426 U.S. 610 [49 L.Ed.2d 91, 96 S.Ct. 2240], the United States Supreme Court held that a prosecutor may not impeach a defendant with his postarrest silence after being given the *Miranda*[3] warnings, if he gives an exculpatory statement heard for the first time at trial. Such a comment amounts to an impermissible penalty for invoking constitutional rights.

Limitations were placed upon the expansion of this rule. ■ When a person is accused of having committed a crime under circumstances affording him the opportunity to refute it, if he does not do so and there is no indication he is relying upon his Fifth Amendment rights at the time, his silence is admissible as an adoptive admission of guilt. (*People* v. *Preston* (1973) 9 Cal.3d 308, 313-314 [107 Cal.Rptr. 300, 508 P.2d 300]; *People* v. *Martin* (1980) 101 Cal.App.3d 1000, 1007-1009 [162 Cal.Rptr. 133].) Finally, in 1980, the United States Supreme Court addressed directly the issue of use of *pre*arrest silence to impeach in *Jenkins* v. *Anderson* (1980) 447 U.S. 231 [65 L.Ed.2d 86, 100 S.Ct. 2124]. The defendant in *Jenkins* was accused of murder. At trial, he contended he acted in self-defense. On cross-examination, the prosecutor asked whether he had told anyone the victim attacked him. The defendant stated he had not, nor had he gone to the police to tell his story in the two-week interim between the killing and when he turned himself in. (447 U.S. at p. 233 [65 L.Ed.2d at p. 91].)

The trial court permitted this line of questioning and the defendant was eventually found guilty. On appeal, he contended the use of his prearrest silence violated his Fifth Amendment right to silence. The court disagreed. It found that when a defendant takes the stand, the Fifth Amendment is not violated by use of his prearrest silence, nor does such use violate his right to a fair trial under the Fourteenth Amendment. (*Jenkins, supra,* 447 U.S.

---

[2]"No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." (U.S. Const., Amend. V.)

[3]*Miranda* v. *Arizona* (1966) 384 U.S. 436, 467-473 [16 L.Ed.2d 694, 719-723, 86 S.Ct. 1602, 10 A.L.R.3d 974].

at pp. 238, 240 [65 L.Ed.2d at pp. 94-95].) *Doyle* was distinguished on the ground that defendant's failure to speak occurred before he was arrested and given his *Miranda* warning. (*Id.*, at p. 240 [65 L.Ed.2d at p. 95].) " 'Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. . . . Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process.' . . . [¶] Thus, impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial. We conclude that the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility." (*Id.*, at pp. 237-238 [65 L.Ed.2d at pp. 94-95].)

 Thus, we arrive at the point defendant urges us to consider—whether article I, section 15 of the California Constitution forbids the use of prearrest silence. The defendant testified on his own behalf, claiming he stole the jacket only because he was threatened by Luis. The following colloquy took place on cross-examination:

"Q. You didn't think to stop and tell the security officer that you were stealing this coat because somebody had threatened to kill you?

"A. No, I didn't. What good would he have did? He's no police, Stockton police officer.

"Q. Did you talk to the police that night?

"A. Yes, I did.

"Q. Did you tell anybody—

"A. I offered—

"Q. Let me finish the question.

"Did you tell anybody that you stole that coat because somebody was threatening to kill you?

"[PUBLIC DEFENDER]: Objection, Your Honor.

"THE COURT: The objection is overruled. . . .

"**·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·** **·**

"[DEPUTY DISTRICT ATTORNEY]: Q. Mr. Callegri, listen to the question, okay?

"Did you tell anybody, yes or no, did you tell anybody that the reason you stole that jacket was because somebody was threatening to kill you?

"A. No, I didn't, sir. I was going to tell Officer Moffitt what had happened, but he, like waved me off when I was going to tell Sergeant Moffitt what had happened."

Defendant, by answering that he did not tell the security officer his reasons prior to committing the theft, opened the door to legitimate cross-examination by replying it would do no good because he was not a Stockton police officer. To bar the next logical question would be to allow defendant to hide behind false inferences raised voluntarily by his answer and to avoid the truth-finding function of the criminal trial.

In *People v. Free* (1982) 131 Cal.App.3d 155 [182 Cal.Rptr. 259], the defendant was tried for murder after shooting a man in a barroom brawl. The defendant fled the scene, remaining at large for more than a month before being captured. At trial, he claimed he shot in self-defense. On cross-examination, the prosecutor asked whether he had gone to the police to explain the shooting. The defendant claimed this line of questioning violated his privilege against self-incrimination under the California Constitution.

██ The court summed up the "California rule" on this issue: "[P]ostarrest silence may not be commented upon if it follows a *Miranda* warning. The same rule may apply if there is no *Miranda* warning in order to foreclose inducement of police to dispense with a *Miranda* advisement where they suspect that the arrestee would refuse to talk anyway or where they know that he will, but manipulate the facts by asking no questions immediately after the arrest, in order to use the defendant's silence against him, later giving a *Miranda* warning in order to secure a statement. Although this procedure leads to gamesmanship, it is approved by United States Supreme Court precedent. (*Fletcher v. Weir* (1982) 455 U.S. 603 [71 L.Ed.2d 490, 102 S.Ct. 1309].) Prearrest silence may be commented upon unless the court finds the silence was an invocation of Fifth Amendment rights. ██ Prearrest silence in circumstances in which there is no inference of a reliance on the right to silence may be used to impeach by way of cross-examination." (*People v. Free, supra,* 131 Cal.App.3d at p. 165.)

In *People v. Redmond* (1981) 29 Cal.3d 904 [176 Cal.Rptr. 780, 633 P.2d 976], the defendant was charged with assault with a deadly weapon.

He claimed the wound was an accident. Two months after the stabbing the defendant revealed to his counsel the location of the weapon. During closing argument the prosecutor stressed the two-month delay as evidence of guilt. On appeal, the defendant claimed this comment violated his protection against self-incrimination. The Supreme Court disagreed, stating: "[W]hen a defendant elects to testify in his own defense a comment on his prior muteness does not necessarily violate his privilege against self-incrimination." (*Id.*, at p. 910, citing *Jenkins* v. *Anderson, supra,* 447 U.S. at p. 238 [65 L.Ed.2d at pp. 94-95, 100 S.Ct. 2124] as authority.

Later, during his closing argument, the prosecutor again raised questions about defendant's explanation of his act: "Listen to the instructions, reasonable man is going to come up over and over again. A reasonable man would not put himself in that position. A reasonable man would not allow himself to continue in that position. A reasonable man would have gone to the authorities and said, 'Hey, my life is pretty important, somebody's trying to kill me. Can you do something about it?' That's not what the defendant did. Then again he argues, and I attempted to guess a little bit, about the immediate danger. Ladies and gentlemen, these aren't complicated words. The instructions and the law is not complicated. Immediate danger means just what [it] sounds like, immediate danger. There were all kinds, all kinds of reasonable alternatives available to the defendant. Go to the authorities, do not steal. He could have armed himself and defended himself if this story were true, which again it just wasn't true."

■ It is clear defendant's counsel interjected with the proper objection necessary to preserve for appeal the issue of improper cross-examination. (*People* v. *Welch* (1972) 8 Cal.3d 106, 115 [104 Cal.Rptr. 217, 501 P.2d 225].) However, defendant does not limit his argument to the cross-examination. He also contends the prosecutor's closing argument contained improper comments. No objection or request for jury admonition was made.

■ Where a defendant complains of prosecutorial misconduct for the first time on appeal, a two-step process must be undertaken. First, it must be decided whether a timely objection and admonition would have cured the harm. If so, the contention must be rejected. If the misconduct could not have been so cured, then and only then must the reviewing court reach the issue of whether, on the record as a whole, a miscarriage of justice has resulted within the meaning of article VI, section 13 of the California Constitution. (*People* v. *Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468].) ■ However, we need not go through this process, as we find no error in the prosecutor's statements.

We find no error in allowing the prosecutor to cross-examine defendant on his silence, nor do we find prosecutorial misconduct in the closing argument.

Defendant alludes to the argument that his right to due process of law under the United States Constitution was violated by the prosecutor's references to his *post*arrest silence. It is unclear from the record exactly when defendant was arrested by the Stockton police. Defendant objects to the following:

"[DEPUTY DISTRICT ATTORNEY]: Q. Mr. Callegri, listen to the question, okay?

"Did you tell anybody, yes or no, did you tell anybody that the reason you stole that jacket was because somebody was threatening to kill you?

"A. No, I didn't, sir. I was going to tell Officer Moffitt what had happened, but he, like waved me off when I was going to tell Sergeant Moffitt what had happened."

Assuming Officer or Sergeant Moffitt is indeed a Stockton police officer, it is unclear from this question as to what time frame the prosecutor was referring to. We find no error under the federal Constitution. First, defendant has failed to adequately brief the issue. His argument consists of the following:

"Here, the district attorney's questions and comments called the jury's attention to both the pre-arrest and post arrest silence of Mr. Callegri. In so doing, he violated Mr. Callegri's privilege against self incrimination under the California Constitution and, as to the references to post-arrest silence, Mr. Callegri's right to due process of law under the United States Constitution." His references to *Doyle* v. *Ohio, supra,* 426 U.S. 610 [49 L.Ed.2d 91, 96 S.Ct. 2240], in an earlier portion of his brief, are merely a summation of the history of the rule and cannot be inferred, six pages later, to apply to an argument that defendant's rights under the United States Constitution are being violated. ■ "Where a point is merely asserted by counsel without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion. [Citations.]" (*People* v. *Ham* (1970) 7 Cal.App.3d 768, 783 [86 Cal.Rptr. 906]; *People* v. *Dougherty* (1982) 138 Cal.App.3d 278, 282 [188 Cal.Rptr. 123].)

■ Second, when there is no evidence that an arrested defendant had received the *Miranda* warnings at the time of his silence, due process is not violated when he is questioned about this silence after taking the stand. (*Fletcher* v. *Weir* (1982) 455 U.S. 603, 607 [71 L.Ed.2d 490, 494, 102 S.Ct. 1309].) We will not speculate when or if defendant was given *Miranda* and whether these warnings had been given at the time defendant spoke to

the officers. The cross-examination and closing argument by the prosecutor were within constitutional limits.

## II

■ Defendant also contends the trial court erred in denying his motion to stipulate to his prior felony conviction. He cites as authority *People* v. *Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826].

Defendant committed his offense on October 28, 1982, four months after passage of the initiative measure known as Proposition 8. Thus, the provision of Proposition 8 applies to this case. (*People* v. *Smith* (1983) 34 Cal.3d 251, 257-258 [193 Cal.Rptr. 692, 667 P.2d 149].) One of the results of the passage of that measure was the enactment of the current section 28 of article I of the California Constitution. The portion of that section applicable to the case before us reads: "(f) *Use of Prior Convictions.* Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. *When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court.*" (Italics added.)

■ It is a fundamental rule of statutory construction that a court should ascertain the intent of the lawmakers in order to effectuate the purpose of the law. (*Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 571 [194 Cal.Rptr. 480, 668 P.2d 787].) ■ This rule applies with equal force to initiative measures adopted by the electorate. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].) The pertinent portion of section 28 states that a prior felony *shall* be proved in open court when it is an element of the offense. **(10)** The word "shall" generally expresses a mandatory intent (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 133 [142 Cal.Rptr. 325]; *Fair* v. *Hernandez* (1981) 116 Cal.App.3d 868, 876 [172 Cal.Rptr. 379] [cert. den. 454 U.S. 941 (70 L.Ed.2d 249, 102 S.Ct. 477)]), although sometimes it will not be found to do so (*Jacobs* v. *State Bar* (1977) 20 Cal.3d 191, 197 [141 Cal.Rptr. 812, 570 P.2d 1230]). Whether "shall" is construed as mandatory or directory depends upon the legislative intent. (*Id.,* at p. 198.) "The test is this: 'If to construe it as directory would render it ineffective and meaningless it should not receive that construction.' [Citations.] Thus, a statute was held to be mandatory where 'to construe this provision of the section as directory merely would be to defeat the very purpose of its enactment.' [Citation.] '. . . [I]t appears that if public policy is in favor of the imperative meaning, the words referred to will be held mandatory.' [Cita-

tion.]" (*People* v. *Municipal Court* (1956) 145 Cal.App.2d 767, 775 [303 P.2d 375].)

■ The intent of the People in enacting that portion of subsection (f) of section 28 is crystal clear—to override the holding of *Hall* and mandate that a prior felony be made known to the trier of fact when such priors are an element of the offense. ■ "Constitutional provisions adopted by the people are to be interpreted so as to effectuate the voters' intent." (*Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537, 538 [58 P.2d 1278]; *Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855 [167 Cal.Rptr. 820, 616 P.2d 802], cert. den. 450 U.S. 918 [67 L.Ed.2d 344, 101 S.Ct. 1362].) If the intent of a provision is clear from the language used there is no room for judicial interpretation. (*Skivers* v. *State of California* (1970) 13 Cal.App.3d 652, 655 [91 Cal.Rptr. 707].) ■ The trial court did not err in refusing to allow defendant to stipulate to his prior conviction.

The judgment is affirmed.

Evans, Acting P. J., concurred.

Sparks, J., concurred in the result.