Evelyn MILLER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15687.

United States Court of Appeals Fifth Circuit.

Feb. 29, 1956.

487

Joe J. Harrell, Jones & Harrell, Pensacola, Fla., for appellant.

C. W. Eggart, Jr., Asst. U. S. Atty., Pensacola, Fla., Harrold Carswell, U. S. Atty., Tallahassee, Fla., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

BROWN, Circuit Judge.

Charged by Information[1] in general terms only, appellant was convicted of knowingly and willfully obstructing, resisting and opposing a Deputy United States Marshal in his effort to serve a subpoena on Richard Morris in violation of 18 U.S.C.A. § 1501.[2]

There was in fact no use or show of force or the threat of violent interference. All it involved was the peaceful refusal by an humble citizen[3] to permit a federal officer to enter her home unless he had a search warrant and the uttering, several times, of a denial, known by her to be false, that the desired witness, Morris, was then in her home.[4] The of-

1. "That on March 19, 1955, * * * Evelyn Miller did unlawfully, knowingly and wilfully obstruct, resist and oppose * * * Lewis, Deputy United States Marshal * * *, in attempting to serve and execute * * * witness subpoenaes on * * * Richard Morris * * * for the appearance of * * * Morris as a witness on March 21, * * * in the criminal case * * * pending in * * * the Southern District of Alabama."

2. "Whoever knowingly and willfully obstructs, resists, or opposes any officer of the United States, or other person duly authorized, in serving, or attempting to serve or execute, any legal or judicial writ or process of any court of the United States, or United States commissioner; or

"Whoever assaults, beats, or wounds any officer or other person duly authorized, knowing him to be such officer, or other person so duly authorized, in serving or executing any such writ, rule, order, process, warrant, or other legal or judicial writ or process—

"Shall, except as otherwise provided by law, be fined not more than $300 or imprisoned not more than one year, or both."

3. Appellant's brief describes the conduct: "Evelyn Miller, a relatively untutored Negro woman, was inside her home when the Deputy United States Marshal knocked on her door and told her that he wished to see Richard Morris * * *. * * * She was simply doing what is normal for a Negro woman to do when one of her relatives was in her home and some officer was trying to find him. Any person who has lived in the South has, no doubt, time and time again, witnessed an unchanging pageant that occurs whenever an officer of the law, a bill collector, or an insurance debit man, goes into a neighborhood in an effort to locate any colored man. Invariably friends, relatives, neighbors and acquaintances never seem to have heard of the man in question, or if they know him, then they do not remember where he lives * * *."

4. The facts briefly were these: Richard Morris, cousin of appellant, desired as a Government and defense witness in a national bank robbery case set for trial in Alabama for Monday, March 21, came to appellant's home in Pensacola, Florida, Thursday, March 17, requesting permission to stay in her home in the hopes of evading imminent subpoenaes. On Saturday noon, March 19, acting on a lead that Morris' car was in appellant's back yard, Lewis, Deputy Marshal, and an FBI Agent went to her home. Lewis, dressed in informal civilian clothes and

ficers, in fact, were not deceived, although they were delayed a few hours until a Warrant of Arrest for Morris as a material witness was issued and served on him in appellant's house.

■ Section 1501, footnote 2 supra, by specific reference in its second paragraph to one who "assaults, beats, or wounds any officer * * *" reflects a purpose to forbid, under the broader terms of the first paragraph, those acts which constitute obstruction, resistance or opposition but which do not involve physical violence. While this is undoubtedly so, it does not by any means follow that the circumstances of this case match that standard.

It is not necessary to lay out the ultimate limit of these terms, although we are emphatic in our view that certainty in the nature of criminal offenses forbids, as the Government attempts to do here,[5] the use of this section as a catch-all to make crimes out of actions which

law-enforcing agents may feel to be undesirable, but which Congress has not seen fit to proscribe.

■ And yet that is the very present danger in the interpretation pressed on us by the Government. If the physical act of allowing Morris to remain in her house for his studied purpose of avoiding discovery is turned into an illegal "harboring or concealing," questions arise as to *when* the offense began—on Thursday, March 17, when he first sought sanctuary but before any officers ever appeared—on Friday, when process apparently was issued in Alabama but yet unserved—or Saturday, March 19, and if so, at what hour—when the process was received or when the Marshal first knocked on the door? Moreover, under a statute not designed or effective to do so, it is to create a crime of harboring and concealing out of facts and situations quite different from those dealt with in the statute specifically enacted for that offense.[6] Similarly, it cannot be used to

sport shirt, knocked on appellant's door and asked if Morris was there, and she said he was not. Lewis then, for the first time, stated that he was a federal officer wanting to serve a subpoena. He showed her his credentials, although apparently not the actual subpoena. He again renewed his inquiry with repeated denials by her and warnings by him of the consequences of her giving untruthful information. Lewis then said: "* * Would you mind letting me come in and seeing, and she said, 'Do you have a search warrant', and I said, 'No, I don't'. She said, 'You can't come in unless you have a search warrant' * * *."

Lewis and the Agents kept the house under surveillance. About 5:00 p. m. appellant came out, arranged for Lewis to meet her in a nearby drugstore, and there told him that Morris was in fact in the house and that they could come in and serve him. In the meantime, arrangements were in progress for issuance of the Warrant of Arrest as a material witness, and the officers waited a few minutes for the warrant and then, using it rather than the original subpoena and appellant's invitation, entered her home and arrested Morris as a witness.

5. Except that the Government always starts with the fact that on Thursday, March 17, appellant knew Morris was

using her home as a hideout to avoid discovery, it is almost impossible to determine just what acts are deemed by the Government to be the offense: e. g., see Government's brief, "The conviction of this Appellant was not based *only* on her *statement* that Richard Morris was not in her house *and* the statement *denying entry* until a search warrant was obtained * * *. Coupled with her many *statements* that were boldfaced lies was the conclusive evidence of her *knowledge* that she was willfully obstructing, resisting and opposing the process server * * *." Again, later on the Government states: "* * * Based upon the foregoing it is our contention that the knowledge and *actions* of the appellant in *harboring* the wanted witness under the circumstances in this case constituted obstruction, resistance and opposition under the meaning of the statute * * *." [Emphasis supplied.]

6. Title 18 U.S.C.A. § 1071:
"§ 1071. Concealing person from arrest
"Whoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for

cover misprisions which, as a specific field of crime, are now narrowly confined.[7] And, of course, the restricted application with the traditional rigid standards of proof of statutes forbidding false swearing or perjury [8] cannot be so easily circumvented by imposing a criminal penalty for the making of every false unsworn statement, as such, to a federal officer on some kind of theory of less majesty not congenial to the temper and spirit of our people or the nature and genius of our institutions.

It was not a federal crime for appellant to allow Morris to remain in the house from Thursday to Saturday noon, nor did that become so when the inquiry and request to enter was made. She had no obligation to deliver him up, if she had the capacity to do so. Cf. Haley v. United States, 9 Cir., 215 F.2d 778. Obviously she could not be resisting, obstructing, or opposing the officers in their efforts to serve the subpoena by giving them information which she and the officers each knew to be false. This

might have been an irritation and an annoyance, but it did not deflect the officers from their conviction that Morris was in the house and their determination to wait him out or enter after him once the Warrant of Arrest was received. This process eliminates, therefore, every act which the appellant did as an obstruction, opposition or resistance *except* her refusal to permit the officer to enter her home. Was the assertion of this ingrained American right a crime?

Upon what ground did the officers have the right to enter her home? They admittedly had no search warrant and her claim of this sacred privilege was both natural and inherently profound. She was entitled to be secure in her home, free from unreasonable search, under the guarantee of the Fourth Amendment to the Constitution. There was neither search warrant nor any other lawful ground.[9] She asserted a right which was hers, and which none could take away. That it gave temporary respite to Morris, or subjected the officers to

---

the apprehension of such person, shall be fined not more than $1,000 or imprisoned not more than one year, or both; except that if the warrant or process issued on a charge of felony, or after conviction of such person of any offense, the punishment shall be a fine of not more than $5,000, or imprisonment for not more than five years, or both." As amended Aug. 20, 1954, c. 771, 68 Stat. 747.

7. There is no misprision of a misdemeanor and the only statute is 18 U.S.C.A. § 4:
"§ 4. Misprision of felony
"Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals, and does not as soon as possible make known the same to some judge or or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both."
Interestingly enough, apparently because of the heavy burden of showing a concealment *and* affirmative acts, the annotations indicate no conviction for misprision ever affirmed.

8. Title 18 U.S.C.A. § 1621:
"§ 1621. Perjury generally
"Whoever, having taken an *oath* before a competent tribunal, *officer*, or person, in *any case* in which a law of the United States *authorizes* an *oath* to be administered, that he will testify, *declare*, depose, or certify truly, or that any written testimony, *declaration*, deposition, or certificate by him subscribed, is *true*, willfully and contrary to such oath states or subscribes any *material* matter which he does' not believe to be *true*, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both." [Emphasis supplied.]

9. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L. Ed. 59. At the time the request to enter was made, no crime was being, or had been, committed to supply an arrest of appellant or Morris as the basis for a rightful entry. And, of course, her refusal to allow the entry cannot itself, by a bootstrap lifting process, be made into the crime of obstructing or resisting in order to allow an entry for the purpose of arresting her for that offense. And, if it did, it would be the appellant, not Morris,

the inconvenience of getting a lawful writ, neither detracts from this right nor subjects her to a crime for having asserted it. McDonald v. United States of America, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; District of Columbia v. Little, 339 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599, affirming 85 U.S.App.D.C. 242, 178 F.2d 13, 13 A.L.R.2d 954; cf. Haley v. United States, supra; Title 18 U.S.C.A. § 2236.

But it was this assertion of this precious constitutional privilege which was the only act having obstructive or opposing characteristics. The officers knew that Morris was in the house. The only thing which kept them from reaching Morris to serve on him the original subpoena was this constitutional bulwark which this humble citizen had the right to raise. Until they found a lawful way to step over this protective wall, or obtain the voluntary consent of appellant, it, not the appellant, gave the wanted witness sanctuary. When the Warrant of Arrest was obtained, or when she recanted voluntarily to give them permission to enter, was the first time the officers could enter and perform their task. The appellant, of course, did not obstruct either of these.

Execution of process and the performance of duty by constituted officers must not be thwarted. But these agents, servants of a Government and a society whose existence and strength comes from these constitutional safeguards, are serving law when they respect, not override, these guarantees. The claim and exercise of a constitutional right cannot thus be converted into a crime.

This evidence does not warrant the conviction. The District Court, on it, should have acquitted[10] the defendant. It is accordingly reversed with directions to enter a judgment of acquittal.

Reversed with directions.

who would be the object of arrest and search.

10. The sufficiency of the evidence to sustain conviction was adequately challenged

and, for a trial before the court, formal motion for judgment of acquittal, Rule 23, Fed.Rules of Crim.Procedure, 18 U.S. C.A., is not required. DeLuna v. United States, 5 Cir.1955, 228 F.2d 114.