**UNITED STATES of America,
Appellee,**

v.

**Leslie Vaughn MAGNESS, Appellant.
No. 71-1709.**

United States Court of Appeals,
Ninth Circuit.
Feb. 16, 1972.

Robert M. Talcott (argued), Sherman Oaks, Cal., for appellant.

David H. Fox, Asst. U. S. Atty. (argued), Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Criminal Division, Los Angeles, Cal., for appellee.

Before HAMLEY, HUFSTEDLER and WRIGHT, Circuit Judges.

PER CURIAM:

Leslie V. Magness appeals from his conviction, after trial without a jury, of concealing [1] Wayland Jean Ballard in order to prevent his apprehension, knowing that a warrant had been issued for Bal-

lard's arrest, in violation of 18 U.S.C. § 1071. The ultimate question presented on appeal is whether the evidence is sufficient to support the finding of guilt. We reverse.

The testimony favorable to the Government is as follows: On December 19, 1970, Magness went to the Cress Motel in the small town of Cabazon, California, and rented Room 7, telling the operator that the room was for some people from out of the state. Magness paid fifteen dollars for a week's rent. On December 22, 1970, a federal warrant for the arrest of Ballard, on a charge of unlawful flight to avoid prosecution for murder, was issued.

About December 26, 1970, Ballard, using the name Wilkins, registered at the Cress Motel as one of the persons for whom Magness had rented Room 7. Magness visited Room 7 several times while Ballard was there. Magness and Ballard were also seen together around town, although Ballard was always introduced as Wilkins. There is, however, no evidence to establish that no one in Cabazon, other than Magness, knew of Ballard's presence; and, in fact, Ballard's girl friend was also in the town during this period.

On January 4, 1971, Federal Bureau of Investigation Special Agent J. Clayton Taylor arrived in Cabazon to investigate whether Ballard was there in hiding. Taylor was accompanied throughout this investigation by several other special agents and law enforcement officers. On January 4, 1971, Taylor spoke to only one person other than defendant about Ballard. That person was a service station attendant who reported that he did not know a Mr. Ballard.

Later on the same day, Taylor spoke to Magness at the latter's home and at that time told Magness about the outstanding federal warrant. Taylor also warned Magness about the federal harboring and concealment statute. When

---

1. Although the judgment states that the conviction was for "harboring," the indictment and trial transcript make it clear that only "concealment" was at issue. Because we reverse the conviction, however, the error is not material.

Taylor asked Magness if the latter had been in contact with Ballard, Magness replied that he had known Ballard about twenty years ago in Texas, but had not seen Ballard for many years.

Following this conversation, Taylor and the others with him left Magness' home and proceeded with the investigation elsewhere. Approximately one hour later, Taylor returned to Magness' home and had a second conversation with him. Taylor told Magness that he had new information linking Magness with Ballard. Magness then admitted that he had been in contact with Ballard, and stated that Ballard was at the Oasis Motel, living under the name of Wilkins.

Taylor and the other officers then proceeded to the Oasis Motel but ascertained that Ballard had been living in Room 7 of the adjacent Cress Motel. Upon their arrival at Room 7, they found it unoccupied. The light was on in the bathroom, the coffee pot was still warm, and food was on the table. Agent Taylor put out an all points radio broadcast regarding Ballard and his automobile. Later the same evening Ballard and his girl friend were apprehended about forty or fifty miles south of Indio, California.

The conduct proscribed by 18 U.S.C. § 1071 is harboring or concealing a person for whose arrest a warrant or process has been issued "after notice or knowledge of the fact that a warrant or process has been issued. . . ." It follows that none of Magness' conduct prior to January 4, 1971, when he first learned of the outstanding warrant for the arrest of Ballard, could constitute an offense under the statute, although it might throw light on Magness' conduct after he gained such knowledge.

■ The Government asserts that, on January 4, 1971, Magness engaged in two acts, each of which constituted a violation of section 1071. The first of these was Magness' false statement to

Agent Taylor during their first conversation on that day, that he had known Ballard about twenty years ago in Texas, but had not seen Ballard for many years. Such a false statement, standing alone, however, could not constitute the active conduct of hiding or secreting contemplated by the statute. United States v. Foy, 416 F.2d 940 (7th Cir. 1969).

The other act relied upon by the Government is Magness' asserted conduct in actively warning Ballard about the possibility of impending arrest by F.B.I. agents.

■ There was no direct evidence that Magness gave such a warning, and the circumstantial evidence of this is, in our opinion, entirely too thin to support the finding of guilt. There is, in this record, no evidence that Ballard had a telephone in his Room 7 at the Cress Motel. While it might be assumed that the operator of the Cress Motel had a telephone, the Government did not call the operator as a witness to ascertain whether Magness telephoned a message to Ballard on January 4, 1971. There is no evidence as to the distance between Magness' residence and the Cress Motel, and therefore proof is lacking that Magness could have personally travelled to the Cress Motel in time to warn Ballard. Under the evidence, the possibility that Ballard had been forewarned by learning, through personal observation or from persons other than Magness,[2] that F.B.I. agents were in town, remains very real.

Under this state of the record we think the showing that Magness warned Ballard on January 4, 1971, is purely speculative and does not support such a finding beyond a reasonable doubt. Indeed, there is nothing in the record to indicate that the trial court made such a finding.

Reversed.

2. Such as, for example, Ballard's girl friend who, as noted, was also in town.