UNITED STATES of America,
Plaintiff-Appellee,

v.

Christian David LEPANTO,
Defendant-Appellant.

No. 85–2687.

United States Court of Appeals,
Tenth Circuit.

May 7, 1987.

Robert T. McAllister of Dill, Dill & McAllister, Denver, Colo., for defendant-appellant.

Kenneth R. Fimberg, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., with him on the brief), Denver, Colo., for plaintiff-appellee.

Before BARRETT, LOGAN, and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Following a bench trial, the district court convicted Christian David Lepanto (defendant) under 18 U.S.C. § 3 as an accessory after the fact to the manufacture of a destructive device in violation of 26 U.S.C. § 5861(f).[1] On appeal, defendant argues that (1) the indictment was insufficient and should have been dismissed; (2) the district court erred in admitting into evidence items allegedly removed from carpet fragments discarded behind defendant's residence; (3) the district court erred in admitting evi-

---

1. The district court made oral findings and conclusions as follows:

"I find that Omar Lepanto did make three bombs, or explosive devices, without having obtained the approval of the Treasury of the United States, and thus violated Title 26 of the United States Code, Sections 5861(f) and 5871.

. . . . .

I find that the defendant, [Christian] David Lepanto, did know that his brother, Omar Lepanto, was making and made at least three bombs in violation of the cited statute.

I was pursuaded [sic] by and find that on August 22, 1984, Steve Leek did tell the defendant that he had seen one of the bombs out in the—where it had been left, and that the defendant better tell his brother, Omar, to stop this or everybody would be in trouble, and that the defendant did indicate to Mr. Leek that the defendant would speak to Omar about it.

I find that the defendant and his brother, Omar, shared the same one room through most of the time in August of 1984—that's the critical time in this case—that both of them, for the most part, lived there during that time.

I find that the defendant did know, because he had to know, what his brother, Omar, was doing and did know that his brother, Omar, was making the bombs in this defendant's room, which he shared with that brother.

I believe and find that the defendant did say to his brother, 'Omar, you have got me into trouble with your bombs,' indicating quite a knowing state of mind after the police were closing in.

I find that the defendant knowingly, and for the purpose of assisting Omar to avoid and hinder punishment and hinder arrest, lied to police Lieutenant Burkhalter and to Postal Inspector Carr for the purpose of protecting his brother, and that he knowingly misstated that he lived alone, that Omar lived with his mother in Boulder, and that he hadn't seen his brother very much since the brother and he had returned from New York.

I further find that this defendant knowingly removed physical evidence from room 10 of 2309 Larimer Street for the purpose of hindering the police and postal officers' investigation of his brother, Omar's, bomb making.

I conclude and find that the defendant's intent and guilty knowledge of his own conduct and his own involvement is corroborated by the evidence of his flight to New York, and I find that he did leave rather precipitously and the timing is more than coincidental. It was brought about by the fact that the police had closed in on his brother, Omar, and that he himself had been closely involved in these activities by being in the room and knowing all about it.

I reach these conclusions and these findings based primarily on circumstantial evidence that has been presented and much of the evidence which has been not even contested.

Thus, I find and conclude that the defendant, Christian David Lepanto is guilty as charged beyond a reasonable doubt of the offense set out in the indictment."
R. V, 492–95.

dence of flight; and (4) the evidence was insufficient to establish the elements of the offense. After carefully reviewing the record, we affirm the district court's judgment.

## I

The superseding indictment charged defendant with knowledge that his brother, Aton Omar Lepanto, had made one or more destructive devices in violation of 26 U.S.C. § 5861(f).[2] *See* 26 U.S.C. § 5845(a)(8) (including "destructive device" in definition of "firearm"). Section 5861(f) prohibits the making of a firearm "in violation of the provisions of [Chapter 53 of Title 26, U.S. C.]." That chapter imposes numerous requirements on the makers of firearms, including paying tax, 26 U.S.C. § 5821, obtaining the approval of the Treasury Secretary, *id.* § 5822, and registering and identifying each firearm made, *id.* §§ 5841, 5842. Defendant argues that the government's failure to specify which of these requirements Omar Lepanto violated renders the indictment fatally defective.

An indictment is sufficient if it (1) contains the elements of the offense charged and clearly apprises the defendant of what he must be prepared to meet, and (2) enables him to plead an acquittal or conviction as a bar to future prosecution for the same offense. *United States v. Salazar,* 720 F.2d 1482, 1486 (10th Cir. 1983), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); *United States v. Janoe,* 720 F.2d 1156, 1159 (10th Cir. 1983), *cert. denied,* 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984).

In *United States v. Mayo,* 705 F.2d 62 (2d Cir.1983), the court refused to dismiss an indictment charging two violations of 26 U.S.C. § 5861(e) (transferring a firearm in violation of 26 U.S.C. ch. 53) even though the indictment failed to identify the provisions of chapter 53 that were violated. *Id.* at 77–78. Similarly, in *United States v. Salazar,* we upheld an indictment charging unlawful acquisition and possession of food stamp coupons in violation of 7 U.S.C. § 2024(b) (prohibiting the use, transfer, acquisition, alteration or possession of such coupons "in any manner not authorized by [chapter 51 of Title 7]") even though the indictment did not allege the "manner" in which the acquisition or possession was unauthorized. 720 F.2d at 1486–87 & n. 4. No greater specificity is required under 18 U.S.C. § 3 in order to adequately allege knowledge on the defendant's part that "an offense against the United States" has been committed. The superseding indictment here tracks the language of § 3 and provides an approximate date and a brief description of defendant's allegedly unlawful conduct. It was sufficient to apprise defendant of the nature of the charges against him and to act as a bar to further prosecution for the same conduct.

## II

On August 23, 1984, Postal Inspector Kent Powell, who was conducting surveillance behind the Denver rooming house in which defendant resided, observed defendant carry a roll of carpet out of the building and throw it in a dumpster. Powell testified that the carpet had "jagged edges" and appeared to be turned inside out, exposing a "dark brown backing-type material." R. III, 167; R. IV, 180. Powell left without removing the carpet from the dumpster.

The next day, Postal Inspector Wendell Riutzel recovered a roll of carpet with the backing exposed from the dumpster behind

---

**2.** The superseding indictment stated:

"On or about August 23, 1984, at Denver, in the District of Colorado, CHRISTIAN DAVID LEPANTO, defendant herein, knowing that Aton Omar Lepanto had made one or more destructive devices, in violation of Title 26, United States Code, Sections 5861(f), did knowingly relieve, comfort and assist Aton Omar Lepanto in order to hinder and prevent Aton Omar Lepanto's apprehension, trial and punishment, in that CHRISTIAN DAVID LEPANTO did make false statements concerning Aton Omar Lepanto to representatives of the United States Postal Inspection Service and the Denver Police Department during an interview, and CHRISTIAN DAVID LEPANTO did attempt to destroy evidence of said offense or offenses; all in violation of Title 18, United States Code, Section 3."
R. I, Doc. 2.

defendant's residence. Riutzel initialed the carpet in two places and turned it over to Postal Inspector Patrick Carr. Carr sealed the carpet in a bag and sent it to the Postal Service's crime laboratory in Washington, D.C. There, various items were removed from the carpet, including a small piece of gray insulation connected by expert testimony with one of the bombs made by Omar Lepanto. These items were offered into evidence as Government's Exhibit 5B, and were eventually admitted.

Defendant contends that Exhibit 5B was never properly authenticated due to four breaks in the chain of custody: first, the government failed to establish that the carpet defendant placed in the dumpster came from his room; second, it was not established that the carpet recovered by Inspector Riutzel was the same as the carpet placed in the dumpster the day before; third, the crime laboratory received a roll of carpeting containing three separate pieces, only two of which bore Riutzel's initials; fourth, the government's witnesses could not identify which of the three pieces of carpeting the items in Exhibit 5B had come from.

■ Authentication or identification of an item of real evidence may be accomplished by any means sufficient to support a finding that the item is what its proponent claims. Fed.R.Evid. 901(a); *United States v. Zink*, 612 F.2d 511, 514 (10th Cir.1980) (authentication may be accomplished by chain of custody or witness identification).

"[I]f, upon consideration of the nature of the article, the circumstances surrounding the preservation and custody of it and the likelihood of intermeddlers tampering with it, the trial judge deems the article to be in substantially the same condition as when the crime was commit-

ted, he may admit it into evidence, and his determination 'that the showing as to identification and nature * * * is sufficient to warrant reception of an article in evidence may not be overturned except for a clear abuse of discretion.'"

*Reed v. United States*, 377 F.2d 891, 893 (10th Cir.1967) (quoting *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir.1960); *see also United States v. Gay*, 774 F.2d 368, 374 (10th Cir.1985).

In this case, the only significant break in the chain of custody occurred when the carpet was left overnight in the dumpster behind defendant's residence.[3] Inspector Riutzel's failure to initial all three pieces of carpet, and the commingling of items recovered from the three pieces, cause us little concern in light of the undisputed testimony that the carpet was recovered from the dumpster in a single roll or bundle and was not unrolled or otherwise disturbed until it reached the crime laboratory. "Absent some showing by the defendant that the exhibits have been tampered with, it will not be presumed that the investigators who had custody of them would do so." *United States v. Wood*, 695 F.2d 459, 462 (10th Cir.1982).

The government's expert witness, Raymond Vorhees, testified that numerous items found in the carpet sent to the crime laboratory matched or corresponded with items obtained during a search of defendant's apartment in November 1984. The common items of greatest significance were paint chips "having at least eight distinct color layers in them," which Vorhees stated were "highly indicative of a common origin." R. IV, 373. On direct examination by defense counsel, Omar Lepanto identified part of the carpet in Exhibit 5A as having been in the apartment he shared with defendant. Inspector Carr testified that during a break in the trial, de-

---

**3.** The government labels the chain of custody issue a "red herring," because the carpet (Government's Exhibit 5A) was admitted by stipulation at the outset of trial. At the same time, however, defense counsel put the government on notice that he would object to Exhibit 5B. When the government later offered Exhibit 5B into evidence, defense counsel raised the issue of the carpet's authenticity as part of his objec-

tion to that exhibit. We believe the district court properly considered this argument. Although defense counsel waived any challenge to the authenticity of the carpet for purposes of its admission as Exhibit 5A, we do not interpret counsel's statements as manifesting an intent to waive argument on that issue in connection with the admission of Exhibit 5B.

fendant walked over to Exhibit 5A and "after examining the carpet, he made kind of a sour look on his face and a noise like 'pew' and he said, 'To think I walked on this with my bare feet.'" R. IV, 352, 356.

■ Given this testimony, the district court's admission of Exhibit 5B was not a clear abuse of discretion. Any remaining uncertainty regarding the source of the exhibit affects its weight and not its admissibility. *Gay*, 774 F.2d at 374; *Wood*, 695 F.2d at 462.

### III

Defendant next argues that the district court erred in admitting evidence of flight. Police interviewed defendant on August 22 and 23, 1984, after two bombs were discovered in the vicinity of Lepanto's rooming house. Robert Barnett, another resident of the rooming house, testified that defendant spoke with him on August 24 about either going to New York or "hid[ing] out in the Barkley Towers." R. IV, 222. Defendant went to New York on August 27, after failing to return several phone calls from the detective who had interviewed him on August 23. In January 1985, defendant called another government witness, Steven Leek, from New York and was informed that a warrant had been issued for his arrest. Defendant told Leek that "I am not hiding, but I am not going to make it easy for me to be found...." R. IV, 284. There was evidence that defendant had been to New York before to visit his grandparents, and that he had indicated a desire to return there to pursue his artistic interests.

■ We have thoroughly explained our position on the admissibility of flight evidence in *United States v. Martinez*, 681 F.2d 1248, 1256–59 (10th Cir.1982) (per curiam). It is sufficient to say here that such evidence "carries with it a strong presumption of admissibility," *id.* at 1256, and that a trial court's decision to admit such evidence will not be reversed absent an abuse of discretion. Although guilt is not a necessary inference from defendant's trip to New York on August 27, it is a permissible one, especially when combined with other

evidence that defendant had lied to the police and attempted to dispose of evidence before leaving the jurisdiction. The district court did not abuse its discretion in admitting the evidence of flight.

### IV

■ Finally, defendant argues that the evidence was insufficient to support his conviction as an accessory after the fact under 18 U.S.C. § 3. The elements of that offense are (1) the commission of an underlying offense against the United States; (2) the defendant's knowledge of that offense; and (3) assistance by the defendant in order to prevent the apprehension, trial, or punishment of the offender. *United States v. Balano*, 618 F.2d 624, 630 (10th Cir.1979), *cert. denied*, 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *United States v. Day*, 533 F.2d 524, 526 (10th Cir.1976), *cert. denied*, 444 U.S. 902, 100 S.Ct. 214, 62 L.Ed.2d 139 (1979). In reviewing the sufficiency of the evidence to support the district court's findings with respect to each of these elements, we must view all of the evidence, both direct and circumstantial, in the light most favorable to the government. *Id.; United States v. Leach*, 749 F.2d 592, 600 (10th Cir.1984). The conviction will be upheld if the evidence could support any rational determination of guilt beyond a reasonable doubt. *United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984).

The first element is undisputed. Omar Lepanto admitted having made three separate explosive devices during August 1984. He pleaded guilty to sending one of them through the mail, and is now serving an eighteen-year sentence in federal prison.

■ Defendant's knowledge of the underlying offense may be proven entirely by circumstantial evidence. *United States v. Burnette*, 698 F.2d 1038, 1051 (9th Cir.), *cert. denied*, 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983); *United States v. Bissonette*, 586 F.2d 73, 76 (8th Cir.1978). In this case, there was ample evidence from which the district court could infer that defendant knew his brother had made

one or more unregistered destructive devices. There was undisputed testimony that during August 1984 the brothers shared a one-room apartment measuring approximately fifteen by twenty-five feet. The defense attorney offered to stipulate, and Omar Lepanto later testified, that all three bombs in question were made on the floor of the shared apartment. Omar testified that defendant knew he was conducting various experiments with bombs. Steven Leek testified that on August 22 he asked defendant to talk to his brother about a bomb he had seen in the alley behind the 2100 block of Larimer Street. Finally, Robert Barnett testified that after defendant spoke with police investigators on the evening of August 22 he returned to his room and told his brother: "Omar, you have gotten me in trouble with your bombs." R. IV, 208–09.

The government contends that defendant assisted his brother in violation of 18 U.S.C. § 3 by lying to the police about his brother's living arrangements, and by attempting to dispose of the carpet containing evidence of Omar Lepanto's bomb-making activities. There is clear evidence that defendant was lying when he told the police on August 23 that Omar lived with his mother in Boulder. But in *United States v. Prescott*, 581 F.2d 1343 (9th Cir.1978), the court suggested, in dicta, that lying to the police about a federal offender's presence in the defendant's apartment would not without more support an accessory after the fact conviction. *Id.* at 1353. The court cited *United States v. Magness*, 456 F.2d 976 (9th Cir.1972), *United States v. Foy*, 416 F.2d 940 (7th Cir.1969), and *Miller v. United States*, 230 F.2d 486 (5th Cir. 1956), as support for that proposition. The courts in *Magness* and *Foy* both held that failure to disclose the location of a fugitive did not constitute "harboring" or "concealing" as prohibited by 18 U.S.C. § 1071.[4] *Magness*, 456 F.2d at 978; *Foy*, 416 F.2d at

941. In *Miller*, the court held that similar conduct did not amount to knowingly and willfully obstructing, resisting, or opposing a process server in violation of 18 U.S.C. § 1501. *Miller*, 230 F.2d at 488–89.

In the instant case, the police never told defendant that his brother was suspected of a crime, or was being sought for questioning. Although defendant's statements regarding his brother's whereabouts were clearly intended to mislead the police, it is far from clear that the imposition of criminal sanctions is justified when the authorities provide no reason whatsoever for their questions. As construed by the government, the language of 18 U.S.C. § 3 is broad enough to prohibit anything less than enthusiastic cooperation with investigating authorities. While such cooperation may be desirable, we are not convinced that Congress intended to mandate it on pain of imprisonment in every instance. As the court in *Miller* noted,

"the restricted application with the traditional rigid standards of proof of statutes forbidding false swearing or perjury cannot be so easily circumvented by imposing a criminal penalty for the making of every false unsworn statement, as such, to a federal officer on some kind of theory of less [sic] majesty not congenial to the temper and spirit of our people or the nature and genius of our institutions."

230 F.2d at 489 (footnote omitted).

■ We need not decide the issue, however, because here, as in *Prescott*, the government has a stronger case. Robert Barnett testified concerning several conversations on August 22 and 23 in which defendant expressed an urgent desire to dispose of the evidence of bomb-making in his apartment, including a carpet. On the afternoon of August 23, Inspector Powell observed defendant throw a roll of carpet into the dumpster behind the rooming house. As discussed above, various items

---

4. 18 U.S.C. § 1071 provides:

"Whoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowl-

edge of the fact that a warrant or process has been issued for the apprehension of such person, shall be fined not more than $1,000 or imprisoned not more than one year, or both...."

linked to the bombs made by Omar Lepanto were removed from this carpet and admitted into evidence. 18 U.S.C. § 3 clearly prohibits attempts to dispose of evidence of the underlying offense. *United States v. Elkins*, 732 F.2d 1280, 1286–87 (6th Cir. 1984); *see Prescott*, 581 F.2d at 1353. Deferring, as we must, to the district court's determination of the credibility of the government's witnesses, we conclude that this evidence is sufficient to support defendant's conviction.

AFFIRMED.