**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lamont D. OSBORN, Defendant–Appellant.**

No. 96–2376.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1997.

Decided July 9, 1997.

Thomas Edward Leggans (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Patrick W. Fitzgerald (argued), Alton, IL, for Defendant–Appellant.

Before BAUER, WOOD, JR., and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Lamont D. Osborn was convicted by a jury of conspiring to distribute cocaine base in violation of 21 U.S.C. § 846, and the district court sentenced him to an imprisonment term of 240 months. Osborn now challenges that conviction here, contending that the district court should have suppressed the incriminating statements he made after his arrest. Because we believe that Osborn's suppression motion was properly denied, we affirm his conviction.

## I.

After he was indicted on drug conspiracy charges, Osborn moved to suppress the incriminating statements he made to authorities after his arrest on June 23, 1994. Osborn admitted after a series of interviews that he had been distributing crack cocaine along with Carl Blackmon and Cornelius Glenn. Yet in his suppression motion, Osborn argued that this confession was the fruit of an unlawful arrest because the authorities did not have probable cause to believe that Osborn had committed any crime. The district court conducted an extensive evidentiary hearing before denying Osborn's motion. That hearing revealed the following facts.

In June 1994, Deputy United States Marshal Richard Knight was notified by federal marshals in Jackson, Tennessee that a fugitive by the name of Carl Blackmon may be in

Carbondale, Illinois. Knight was told that a warrant for Blackmon's arrest had issued in the Western District of Tennessee after Blackmon had failed to appear for a sentencing in that district. The Tennessee authorities believed that Blackmon may be staying with an aunt who lived in a Carbondale housing complex, and they told Knight that Blackmon would be driving a dark blue or green Buick with Tennessee license plates. They also provided Knight with a photograph of Blackmon and told him that Blackmon had a gang symbol (a six-pointed star) tattooed on his chest and on one arm.

With help from the Carbondale Police Department, Knight arranged for surveillance of the housing complex where Blackmon's aunt lived. At approximately 6:30 p.m. on June 23, 1994, while watching a group of men in front of the housing complex, Knight observed a man with a six-pointed star on his shirt get into an automobile with two other men. While Knight then watched, the vehicle pulled away. Suspecting that the man he had seen was Blackmon, Knight instructed Carbondale police officers to effect a traffic stop of the vehicle. When they did so, Knight was informed over the radio that like Blackmon, the suspect with the star on his shirt had a scar under his eye.

After receiving instructions from Knight, the officers separated the vehicle's three passengers and asked their names. The man they believed to be Blackmon did not have any identification but said that his name was Destin Lestin Osburn, spelling his last name with a "u." The man later identified as Cornelius Glenn said that his name was Patrick Deshun Williamson and that he was from Jackson, Tennessee. The car's driver gave his name as Lamont Osborn, spelling his last name with an "o". Blackmon indicated that he was Osborn's brother, but at the same time, Osborn said that he had met Blackmon/Osburn only recently and that the two were not related. Knight knew, however, that Blackmon and Osborn were cousins because he had learned that Blackmon's aunt was Osborn's mother. In light of that knowledge and the discrepancies in the information provided by Blackmon and Osborn, Knight instructed the officers to bring Blackmon to

a gas station a short distance away where Knight was waiting. When questioned by Knight at the gas station, Blackmon repeated that his name was Osburn and that he was the brother of the automobile's driver (Osborn). Knight was able to observe during their conversation, however, that the man's appearance matched that of Blackmon in the photograph; specifically, Knight noted that the man had tattoos on his body and a scar under his eye. Knight therefore arrested Blackmon, advised him of his *Miranda* rights, and told him that he would be taken to the Carbondale police station.

Knight then instructed the local officers to bring Osborn and Glenn to the station as well. Knight indicated that he wanted to talk with both men about their relationship to Blackmon, as he was considering charging them with harboring a federal fugitive. Knight specifically knew at that point that Blackmon and Osborn were cousins and that the aunt with whom Blackmon was staying was Osborn's mother. Osborn, however, had denied knowing Blackmon until recently and had denied that there was any type of familial relationship between them. Osborn later admitted that he had done so in order to conceal his cousin's identity from the authorities.

The local police officers permitted Osborn to drive to the police station himself, and Osborn testified at the suppression hearing that he drove there voluntarily. Upon arrival, Osborn was placed in an interrogation room and advised of his *Miranda* rights. Although he was told that he was free to leave the station, when he attempted to do so, he learned that the door leading from the area surrounding the interrogation room was locked. Thus, despite what the officers repeatedly told him, Osborn was unable to leave that area or the station itself. Knight testified at the suppression hearing that once Osborn arrived at the station, he was not free to leave.

After arranging to have the FBI confirm Blackmon's identity through a fingerprint analysis, Knight questioned Osborn in the interrogation room. Osborn again maintained that Blackmon/Osburn had been in Carbondale only about one month, that Os-

born had just met him, and that the two were not related. Osborn also repeatedly denied any involvement with drugs. Once the FBI confirmed Blackmon's identity, however, Blackmon admitted that he had been dealing drugs in Carbondale along with Osborn and Glenn. When later told of Blackmon's statements, Osborn admitted that Blackmon was his cousin, that he knew Blackmon was a federal fugitive, and that he had distributed drugs with Blackmon and Glenn.[1]

After hearing this evidence, the district court denied Osborn's motion. The court concluded that Osborn had not yet been arrested when he was asked to drive his vehicle to the Carbondale police station, but that he was under arrest by the time he was placed in the interrogation room. At that point, the court determined, Osborn was not free to leave the station. The court found, however, that Knight had by then obtained sufficient information to provide him with probable cause to arrest. Specifically, the court found that there was probable cause to believe that Osborn had violated two federal statutes: 18 U.S.C. § 3, because Osborn had been an accessory after the fact to Blackmon's underlying federal offense; and 18 U.S.C. § 1001, because Osborn had made a material false statement to authorities in order to conceal Blackmon's identity. Yet the court rejected the government's argument that Knight also had probable cause to believe that Osborn had violated 18 U.S.C. § 1071, which makes it a crime to harbor or conceal a fugitive. Finally, the court found probable cause to believe that Osborn had violated an Illinois obstruction statute. *See* 720 ILCS 5/31–4. Because Osborn's arrest was thus supported by probable cause, the district court found no basis for suppressing Osborn's confession.

## II.

■ We review the district court's probable cause determination de novo. *Ornelas v.*

United States, — U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996); *United States v. Washington,* 109 F.3d 459, 465 (8th Cir.1997). In conducting our de novo review, however, we accept the district court's findings of historical fact unless they are clearly erroneous and "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas,* — U.S. at ——, 116 S.Ct. at 1663. Yet at the same time, *Ornelas* makes plain that that does not relieve this court of its obligation to independently assess the ultimate issue of probable cause. As the Supreme Court emphasized, only through independent review of that ultimate question can an appellate court "maintain control of" and clarify the controlling legal principle. *Id.* at ——, 116 S.Ct. at 1662. In this case, Osborn does not challenge any of the district court's factual findings. We therefore accept the court's findings and proceed to independently assess whether the facts found by the district court were sufficient to provide probable cause for Osborn's arrest.

■ An arrest is supported by probable cause if, at the moment it was made, "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *see also Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam); *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). A finding of probable cause, we emphasize, may be made on less evidence than would be required to support a conviction, although the finding requires something more than mere suspicion. *Brinegar,* 338 U.S. at 175, 69 S.Ct. at 1310–11. Thus, an arrest's validity "does not de-

---

**1.** At the suppression hearing, Osborn testified that he was interrogated periodically between 7:00 p.m. on June 23, 1994 and approximately 3:00 a.m. on June 24. He maintained that during that time, he repeatedly was told that he was free to leave, but he consistently found that he was unable to do so. Osborn stated that after initially denying any involvement with drugs, he

changed his story upon being told that he would be permitted to leave if he told the officers what they wanted to hear. Because the voluntariness of Osborn's confession was not at issue, however, the district court did not need to resolve these discrepancies in the evidence in order to deny the suppression motion.

pend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979). Furthermore, in assessing probable cause, an arresting officer is not required to anticipate that the suspect may be able to raise a defense to the charge that has not been clearly established in the courts. The officer need not predict, in other words, that a presently untested or ambiguous defense will later be accepted as valid to the charge under consideration. *See United States v. Tipton,* 3 F.3d 1119, 1124 (7th Cir. 1993); cf. *DeFillippo,* 443 U.S. at 37–38, 99 S.Ct. at 2632 (in the absence of controlling precedent establishing that city ordinance was unconstitutional, police officer was not required to anticipate that a court would later deem it so).

■ The district court considered a number of possible offenses that Osborn may have committed here, but we shall limit our consideration to whether Knight had probable cause to believe that Osborn was an accessory after the fact in violation of 18 U.S.C. § 3.[2] That offense has the following elements: "(1) the commission of an underlying offense against the United States; (2) the defendant's knowledge of that offense; and (3) assistance by the defendant in order to prevent the apprehension, trial, or punishment of the offender." *United States v. Lepanto,* 817 F.2d 1463, 1467 (10th Cir.1987); *see also United States v. Daddano,* 432 F.2d 1119, 1129 (7th Cir.1970), *cert. denied,* 402 U.S. 905, 91 S.Ct. 1366, 1367, 1391, 28 L.Ed.2d 645 (1971). Osborn asserts that Knight did not have sufficient information at the time of his arrest to warrant a reasonably prudent person in believing that the

second and third elements of an accessory offense were satisfied here. He argues that at the time of the arrest, Knight had no information suggesting that Osborn knew of Blackmon's fugitive status or that Osborn had assisted Blackmon in order to prevent his apprehension.

Yet at the time of Osborn's arrest,[3] Knight knew that Blackmon had committed a federal offense by failing to appear for his sentencing in the Western District of Tennessee and that federal marshals in that district suspected that Blackmon may be staying with an aunt in a housing complex in Carbondale. Knight also had observed a man matching Blackmon's description depart that housing complex in a vehicle driven by the defendant Osborn. Once that vehicle was stopped by local police, moreover, Knight learned that Blackmon and Osborn were cousins because he now knew that the aunt with whom Blackmon was staying was also Osborn's mother. Although Blackmon matched the description of the man Knight was seeking, Blackmon told Knight and the local police that his name was Destin Lestin Osburn (with a "u") and that the driver of the vehicle (Osborn) was his brother. Yet in a separate interview, Osborn spelled his last name with an "o," telling the officers that he had met Blackmon/Osburn only recently and that the two were not related.

We think it fair for a reasonable officer to have inferred from this information that Osborn knew of Blackmon's fugitive status and that Osborn was attempting to conceal Blackmon's identity in order to prevent his apprehension. In our view, Knight had probable cause to believe that an accessory violation had occurred despite the fact that Osborn never admitted to knowing of Blackmon's federal offense. The existence of that element could be inferred here from the sur-

---

**2.** That statute provides in pertinent part as follows:

Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact. 18 U.S.C. § 3.

**3.** The district court determined that the arrest occurred only after Osborn had been taken to the

police station and placed in an interrogation room. Although Osborn argued to the lower court that the arrest took place earlier, when he was directed to go to the Carbondale police station, he does not dispute the district court's contrary finding in this appeal. Whether the arrest occurred at the police station or sometime earlier is ultimately immaterial, however, because the information known to Knight and the other officers did not change in that interval.

rounding circumstances. *See Lepanto,* 817 F.2d at 1467 ("Defendant's knowledge of the underlying offense may be proven entirely by circumstantial evidence."). Moreover, once Osborn denied any sort of familial tie between the two, Knight had probable cause to believe that Osborn was concealing Blackmon's identity in order to prevent his apprehension.

In that regard, however, Osborn argues that a lie to authorities is insufficient, standing alone, to violate section 3, especially when an investigating officer provides no explanation for his questioning. Relying on the Eighth Circuit's decision in *Lepanto* and the Ninth Circuit's decision in *United States v. Prescott,* 581 F.2d 1343, 1353 (9th Cir.1978), Osborn contends that a reasonable law enforcement official would have realized that his lie was outside the scope of the federal accessory statute.

It is true that both *Lepanto* and *Prescott* intimate that something more than a simple lie may be required in order to establish a violation of section 3, but neither case so holds. Rather, in each case, the court was able to avoid that question because it found additional evidence that, in conjunction with the defendant's lie to authorities, established the third element of an accessory offense. *See Lepanto,* 817 F.2d at 1468–69 ("We need not decide the issue, however, because here, as in *Prescott,* the government has a stronger case."); *Prescott,* 581 F.2d at 1353. Aside from the dicta in those cases, then, Osborn can point to no case holding that a lie like this one would be insufficient to satisfy the "assistance" element. In particular, Osborn points to no decision of the Supreme Court or of this court so holding. Although this court has never addressed the precise question raised by Osborn under section 3, we do not think the answer is free from doubt. Indeed, when recently presented with the same argument based upon *Lepanto* and *Prescott,* a court of military review surveyed the relevant case law and concluded that "[t]he federal circuits appear to be split" on whether a simple lie to authorities is sufficient to make one an accessory after the fact. *United States v. Davis,* 39 M.J. 942, 945 (N.M.C.M.R.1994), *aff'd,* 42 M.J. 453

(C.M.A.A.F.1995). Because we are dealing today only with probable cause to arrest, and not with the quantum of proof necessary to support a conviction, we need not provide a definitive answer for this circuit. It is sufficient for us to say that at the time of the events in question here, it was not clear that Osborn's lie to authorities fell outside the scope of 18 U.S.C. § 3. The possibility that Osborn may have succeeded with that argument had an accessory charge been brought did not deprive Knight of probable cause to arrest him. *See Tipton,* 3 F.3d at 1124; *see also DeFillippo,* 443 U.S. at 37–38, 99 S.Ct. at 2632.

Because Osborn's arrest was supported by probable cause, his motion to suppress was properly denied.

AFFIRMED.