**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 26, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KIMBERLY CHANCELLOR, a/k/a
Kim Chancellor,

Defendant-Appellant.

No. 08-5171
(D.C. No. 4:08-CR-00022-GKF-1)
(N. Dist. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.

Kimberly Chancellor appeals his convictions for one count of aggravated

sexual abuse of a minor and two counts of attempted aggravated sexual abuse of a

minor in violation of 18 U.S.C. §§ 1151, 1153, 2241(c), 2246(2)(A)-(D).  On

appeal, he contests the district court's issuance of jury instructions and the

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, *res judicata*, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with the terms and conditions of 10th
Cir. R. 32.1 and 10th Cir. R. 32.1.  After examining the briefs and appellate
record, this panel has determined unanimously to grant the parties' request for a
decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir.
R. 34.1(G).  The case is therefore ordered submitted without oral argument.

sufficiency of the evidence underlying his convictions, and asserts that cumulative error warrants reversal. We affirm.

At the time of the offenses, Mr. Chancellor lived in Salina, Oklahoma. In the summer of 2003, his daughter's eleven-year old friend, A.D.F., spent the night with his daughter at his house. During the night, A.D.F. woke up and went to the restroom. While there, Mr. Chancellor entered the restroom and raped her. A.D.F. did not say anything about the event until she was approached by federal investigators several years later.

C.A., another victim alleged in the indictment, attended a 2007 New Year's Eve gathering at Mr. Chancellor's mother's house, where she was offered and imbibed alcoholic beverages. Thereafter, she and others went to Mr. Chancellor's house to sleep. At some point that night, she awoke to someone screaming. She saw Mr. Chancellor leave the room. She also noticed that her pants had been pulled down, and her private region was sore and covered in an unusual liquid. K.R.H., Mr. Chancellor's daughter, observed the event and later testified that she saw Mr. Chancellor raping or attempting to rape C.A. [Aplt. Br. at 12-13].

Mr. Chancellor also attempted to rape K.R.H. She testified that on May 20, 2007, Mr. Chancellor crawled into bed with her, touched her breasts over her shirt, attempted to pull her pants down, and moved his naked, erect penis against her through her pants. Mr. Chancellor's ex-girlfriend, Janet Wells, witnessed the assault and attempted to coax Mr. Chancellor out of the room. He eventually

went to sleep. Ms. Wells contacted an attorney to report the incident and get help.

On February 6, 2008, Mr. Chancellor was indicted on two counts of violating 18 U.S.C. §§ 1151, 1153, 2241(c) and 2246(2)(A)-(D), and the United States Marshals began a fugitive investigation to locate him. Mr. Chancellor relocated several times during the weeks subsequent to his indictment. Investigators eventually learned that Mr. Chancellor had been arrested for public intoxication in Dallas, Texas and was staying at a homeless shelter there. He was arrested and returned to the Northern District of Oklahoma. On April 8, 2008, a superceding indictment issued, adding an additional count under the same statutes. A jury convicted Mr. Chancellor of all three counts, and he was sentenced to concurrent life terms on each count. This appeal followed.

Mr. Chancellor first contends the district court erred in instructing the jury as to the jurisdictional element. Specifically, he refers to Instructions 19, 24, and 29, which each read in relevant part:

> *Fifth*: The offense was committed in Indian Country, at Salina, Oklahoma, in the Northern District of Oklahoma. . . .
>
> As to the fifth element of this offense, you are further instructed that the United States and the defendant have stipulated that the residence of the defendant is within Indian Country located in the Northern District of Oklahoma. You may thus accept the fifth element as being proved.

*See* Rec., vol. 1, doc. 58 at 23, 28, 41. Mr. Chancellor argues that "[b]y telling

the jury they must accept the fifth element as being proved (which contains the language '[t]he offense was committed . . .'"), the jury was instructed that the criminal offenses did in fact occur. Therefore, the jury no longer had to determine if the crimes of rape and attempts to engage in sex with minors happened." Aplt. Br. at 21.

In general, "[w]e review de novo the jury instructions as a whole and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Bedford*, 536 F.3d 1148, 1152 (10th Cir. 2008) (citations and quotation marks omitted). Where, as here, the defendant raises his claim of instructional error for the first time on appeal, our review is typically governed by the plain-error standard. *See United States v. Hutchinson*, 573 F.3d 1011, 1019 (10th Cir. 2009). Under that standard, defendant "is entitled to relief only if he can show that the district court's jury instruction constituted (1) error, (2) that is plain, and (3) affects his substantial rights, as well as (4) the fairness, integrity, or public reputation of judicial proceedings." *Id.* Mr. Chancellor asserts the alleged errors were structural in nature, and thus defy plain error review. *See*, *e.g.*, Aplt. Br. at 23 ("[S]tructural error at trial requires reversal."); *see also United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005) ("Structural errors deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a

-4-

vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'"  (citation omitted)).

Viewing the instructions as a whole, we see no error – structural or plain – in the disputed jury instructions.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("[T]he instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record." (internal quotation marks and citation omitted)).  The introductory jury instructions advised the jury of the presumption of innocence attached to Mr. Chancellor, *see* Rec., vol. 1, doc. 58 at 2, and described the burden of proof, *id*. at 8.  Furthermore, each disputed instruction commanded the jury to find each of the listed elements beyond a reasonable doubt.  *Id*. at 23, 28, 41.  The instructions did not "t[ell] the jury Mr. Chancellor was guilty" nor did they otherwise contain a command to the jury that they "must" accept that "the offenses were true."  *See* Aplt. Br. at 21.  Quite the contrary, each disputed instruction charged the jury with determining *each* element of the offense beyond a reasonable doubt, including whether the offense occurred in the first instance.  *See* Rec., vol. 1, doc. 58, at 23, 28, 41.

Mr. Chancellor also claims that the evidence was insufficient to sustain his convictions on all three counts.  We review sufficiency of the evidence *de novo*, viewing the evidence as a whole and in the light most favorable to the government, "asking whether any rational trier of fact could have found the

-5-

defendant guilty of the crime beyond a reasonable doubt." *United States v. Parker*, 553 F.3d 1309, 1316 (2009). Our review is deferential to the jury's factfinding, and we must sustain Mr. Chancellor's conviction if any rational juror could have found him guilty. *Id.* Moreover, the factfinder's credibility determinations are "virtually unreviewable on appeal." *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1134 (10th Cir. 2003). We will overturn a jury's credibility determination and disregard a witness's testimony *only* if the testimony is inherently incredible – that is, only if the events recounted by the witness were impossible "under the laws of nature" or the witness "physically could not have possibly observed" the events at issue. *United States v. Oliver*, 278 F.3d 1035, 1043 (10th Cir. 2001).

Mr. Chancellor argues that the evidence was insufficient to support his convictions because "[t]here was no physical evidence introduced at trial," Aplt. Br. at 28, and the victims' testimony was "incredible." *Id*. at 40-41. Mr. Chancellor's identification of conflicting witness testimony,[1] omissions in

---

[1] *See* Aplt Br. at 32 (noting that C.A. had initially stated Mr. Chancellor "had not done anything inappropriate with her," yet eight months later, she "contradicted her previous claim . . . .").

testimony,[2] and delays in reporting by the child rape victim[3] fail to overcome the presumption in favor of the jury's findings.[4] *See Tapia v. Tansy*, 926 F.2d 1554, 1562 (10th Cir. 1991) ("We do not sit as a new trier of fact. We presume that the jury's findings in evaluating the credibility of each witness are correct.").

> Because we are not free to weigh the credibility of witnesses whose testimony is not inherently incredible, [the defendant's sufficiency of the evidence] challenge fails as a matter of law, and we need not analyze the elements of each conviction or point out the over-whelming evidence in the record supporting them.

*See United States v. Smith*, 131 F.3d 1392, 1399 (10th Cir. 1997).

Mr. Chancellor also asserts the district court erred in instructing the jury "that they could consider the evidence that Mr. Chancellor left as consciousness of guilt." Aplt. Br. at 43. He argues that viewing the facts as a whole, "they demonstrate that the evidence was insufficient to establish Mr. Chancellor's going to Dallas resulted from feelings of guilt attributable to the offenses charged in the instant case." *Id*. at 45. We review "the district court's decision to give a

---

[2] *Id*. at 34 ("K.R.H.'s testimony should be disregarded on review because . . . according to K.R.H. [there were five people] in the bedroom as Mr. Chancellor was allegedly attempting to engage in sex with C.A., however C.A. never alluded or mentioned other persons . . . .").

[3] *See id*. at 38 ("[I]t took A.D.F. about five years to tell anyone about the alleged incident.").

[4] We also note that Mr. Chancellor mischaracterizes the facts. *Compare id*. at 32 ("there was no identification of Mr. Chancellor as being the person attempting to engage in sex with C.A. [on the date of the offense]") *with id*. at 14 ("K.R.H. testified she saw her dad trying to have sex with C.A., and that he did have sex with C.A.").

particular jury instruction for abuse of discretion . . . .” *United States v. Fria*

*Vazquez Del Mercado*, 223 F.3d 1213, 1216 (10th Cir. 2000) (quotation omitted).

In a criminal prosecution, evidence of flight possesses a strong presumption

of admissibility. *United States v. Martinez*, 681 F.2d 1248, 1256 (10th Cir. 1982)

(per curiam). Evidence of flight may be admitted even when more than one

possible explanation exists for the departure. *See United States v. Lepanto*, 817

F.2d 1463, 1467 (10th Cir. 1987) (guilt of the charged offense need not be only

possible inference to be drawn from evidence of flight, it need only be a

permissible inference). In this case, the district court instructed the jury that Mr.

Chancellor's departure was neither dispositive nor necessarily inculpatory:

> Evidence that the defendant immediately fled after having been accused of committing a crime is a circumstance that, if proven, can be considered by the jury as showing a consciousness of guilt on the part of the defendant.
> In your evaluation of this evidence of flight you may consider that there may be reasons–fully consistent with innocence–that could cause a person to flee. Fear of law enforcement or a reluctance to become involved in an investigation or simple mistake may cause a person who has committed no crime to immediately flee.
> Whether or not evidence of immediate flight on the part of the defendant causes you as members of the jury to find a consciousness of guilt on his part and the significance, if any, of that consciousness of guilt is entirely up to you as the sole judges of the facts of this case.

*See* Rec., vol. 1, doc. 58 at 19.

Because Mr. Chancellor's departure from his home in Oklahoma to live on the

streets of Dallas, Texas occurred at the same time that law enforcement began

-8-

investigating him and notifying his acquaintances that Mr. Chancellor was facing charges, consciousness of guilt was a permissible inference to be drawn from his flight. The district court "correctly cautioned the jury that it was up to them to determine whether the evidence proved flight and the significance, if any, to be accorded such a determination." *United States v. Kennard*, 472 F.3d 851, 855 (11th Cir. 2006). Mr. Chancellor has not shown that the district court abused its discretion in instructing the jury that it could consider his flight in determining whether he was guilty. *See id.*

Because we have rejected each of Mr. Chancellor's claims of error, there can be no cumulative error. Accordingly, we **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge